Winthrop Restaurant Company for Use of Stock Yards Packing Company, Appellee, v. Anthony Kournetas and Speros Zotos, Appellants.

Gen. No. 35,271.

Heard in the third division of this court for the first district at the June term, 1931. Opinion filed March 16, 1932.

BITHER & BITHER, for appellants.

O'CONNOR & CONROY, for appellee; VINCENT H. O'CONNOR, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

On December 12, 1930, the Stock Yards Packing Company, a Corporation, obtained judgment for $718.70 and costs against Winthrop Restaurant Company, a corporation. Execution issued on said judgment and was returned no part satisfied. Thereafter the Stock Yards Packing Company filed its affidavit for garnishment summons against Anthony Kournetas and Speros Zotos, as garnishees. The answer filed by the garnishees was contested by plaintiff and a trial was had on the issues before the court without a jury. On April 10, 1931, the court found that Kournetas and Zotos, as garnishees, had in their possession certain personal property belonging to the defendant, Winthrop Restaurant Company, and entered judgment against them, ordering them to turn over said personal property to the bailiff of the municipal court on special execution, and directing the bailiff to sell the same and out of the proceeds of the sale to satisfy the original judgment and costs of the Stock Yards Packing Company in the aforesaid sum, the residue to be held for the use of the garnishees. From this garnishment judgment, Kournetas and Zotos have prosecuted an appeal.

It appears from the record and the trial court found that Winthrop Restaurant Company sold its business located at 1101 Bryn Mawr avenue, Chicago, Illinois, to the garnishee, Kournetas, on July 31, 1930; that prior thereto on December 12, 1930, Stock Yards Packing Company recovered a judgment against Winthrop Restaurant Company, which was in full force and effect when the latter sold its business to Kournetas; that Kournetas, the garnishee, demanded and received

from Winthrop Restaurant Company an affidavit made by George Poulos, its president, in accordance with the provisions of section 1, chapter 121-A of the act relating to sales of personal property (Cahill's Statutes, ch. 121a, ¶ 1), commonly known as the Bulk Sales Act, which affidavit is herewith set forth in full:

"VENDOR'S LIST OF CREDITORS.

"STATE OF ILLINOIS, }
"COUNTY OF COOK  } ss.

"George Poulos, being first duly sworn on oath says that he is the President of the Winthrop Rest. Co. the following is a full, accurate and complete list of the creditors of Winthrop Restaurant Company, a Corp. together with the addresses and the amounts owing to each of said creditors.

"Affiant further says that he makes this statement with a view to the sale of the personal property now located at 1101 Bryn Mawr avenue, Chicago, Illinois, of Winthrop Restaurant Company. And further affiant saith not.

"That there are no outstanding bills unpaid against the Winthrop Restaurant Company.

"(Signed) George Poulos
"(Signed) Tom Poulos

"Subscribed and sworn to before me this 31st day of July, 1930.

Notary Seal.      (Signed) William A. Bither,
"Notary Public."

Upon hearing of the garnishment suit before the court, it was stipulated by all parties that the sole issue for determination was whether or not the Poulos affidavit was a sufficient compliance with the statute. No question is raised as to the liability of Zotos. The court held the affidavit insufficient in law and therefore fraudulent and void as to Stock Yards Packing Company, and thereupon entered judgment against Kournetas and Zotos.

The first paragraph of the affidavit states that "the following is a full, accurate and complete list of the creditors of Winthrop Restaurant Company, a Corp." etc., but no creditors are actually listed. The last paragraph states that "there are no outstanding bills against the Winthrop Restaurant Company," and the principal controversy arises over the language of this paragraph.

The Bulk Sales Act provides that where there are creditors, a full, accurate and complete list of such creditors, together with the addresses and amounts owing to each, should be furnished, and "if there be no creditors a written statement under oath to that effect" shall be demanded of the vendor and received by the vendee. The gravamen of appellants' contention is that "outstanding bills" covers all kinds of indebtedness, and that the purchaser had a right to assume that no indebtedness existed. No authority is cited to support this contention, however. Appellees cite a number of cases where language was employed to show that no claims or liens existed against the particular merchandise sold, and in each instance the courts of this and other States held affidavits so limited to be insufficient to satisfy the requirements of the statute.

We are of the opinion that the municipal court properly held the affidavit herein to be insufficient for the following reasons: Our Bulk Sales Law and similar statutes enacted in other States were designed primarily for the protection of creditors, and to prevent the sale in bulk of a business so as to defraud and defeat the claims of those to whom the vendor might be indebted. *Joplin Supply Co. v. Smith,* 182 Mo. App. 212. The statute, without prescribing any particular form of affidavit, expressly stipulates that if there be no creditors an affidavit to that effect should be required and received by the purchaser. The word

"creditor" used in the statute has a broad meaning, and was evidently intended to include not only general creditors, but judgment creditors and others having claims against the seller. Consequently, the affidavit required and to be received by the purchaser should be sufficiently broad to include creditors of every class, without limitation. The language "outstanding bills unpaid" employed in the instant case may not include creditors in the sense contemplated by the statute. This being a statutory proceeding, the fundamental rule that the statute should be strictly complied with seems to us to be applicable. To hold otherwise would open the door to fraud and tend to defeat the very purpose of the statute, which is to protect the creditors of the vendor. Holding this affidavit valid would afford protection to the purchaser and deprive the judgment creditor of the benefits contemplated by the statute, and while both the purchaser and the judgment creditor may be innocent, a more just result will follow from placing the responsibility of an insufficient affidavit upon the shoulders of the purchaser, who had it within his power to require an affidavit in compliance with the requirements of the statute, rather than upon the creditor who did not in any wise participate in the transaction. It would have been a simple matter for Kournetas to have required an affidavit sufficiently broad to cover the statutory requirements. While we do not hold that the affidavit must necessarily employ the word "creditors," we do hold that it must be sufficiently broad and comprehensive to include every class of indebtedness, and we do not believe that the words "outstanding bills unpaid" are sufficiently comprehensive to satisfy the requirements of the statute.

For the reason stated, the judgment of the municipal court will be affirmed.

*Affirmed.*

HEBEL, P. J., and WILSON, J., concur.