## C. & E. Marshall Company, Plaintiff in Error, v. Irving M. Leon, Defendant in Error.

### Gen. No. 35,991.

Opinion filed July 13, 1932.

GOLDMAN, ALLSHOUSE & HEALY, for plaintiff in error; ROBERT G. DREFFEIN and M. M. LOMAN, of counsel.

IRVING S. BERMAN, for defendant in error.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff brought suit to recover an indebtedness of $70 for goods and merchandise sold by it to the defendant. It also filed an affidavit for an attachment in aid, in which J. M. Braude and Emanuel Maltz Company were made garnishees. After a hearing the court quashed the writ in attachment and discharged the garnishees but entered judgment against the defendant on plaintiff's claim for $70. Plaintiff, by this writ of error, questions the holding of the court in the attachment suit.

The grounds for the attachment as stated in plaintiff's affidavit were, that the defendant had within two years last past fraudulently conveyed his effects, or part thereof, and fraudulently concealed or disposed of his property so as to hinder or delay his creditors. Defendant filed a traverse to these allegations.

In February, 1931, defendant was engaged in the retail jewelry business in Chicago and was insolvent, and desired to make a composition with his creditors by paying them 25 per cent of their respective claims. To secure funds for this purpose he entered into an agreement with the Emanuel Maltz Company to sell to it his stock of merchandise, for which the Maltz Company agreed to advance a sum equal to 25 per cent of the claims of the creditors; not, however, in excess of $1,500. It was agreed that between the date of this agreement and the final consummation of the sale, defendant should have the right to sell the merchandise and apply the net proceeds on account of the amount due from the Maltz Company to the creditors. In the event "fill-in" merchandise was necessary, defendant agreed to purchase the same from the Maltz Company. It was agreed that upon receipt of a bill of sale the Maltz Company should conduct an auction sale of the merchandise on the premises and the pro-

ceeds from the sale were to be applied, first, to the payment of "fill-in" merchandise; second, to reimburse the Maltz Company for money advanced by it to pay 25 per cent of the creditors' claims; third, to defray the expenses of the sale; and fourth, pay defendant 25 per cent of the net profits from said sale.

Upon the execution of this agreement the Maltz Company delivered to J. M. Braude, as escrowee, its check for $1,500, which was paid. Braude gave notice to the plaintiff that the Maltz Company was about to purchase the merchandise and business conducted by defendant and that the sale would be consummated after the expiration of five days from date; that the notice was given in compliance with the Bulk Sales Act, Cahill's St. ch. 121a, ¶ 1 *et seq.*, and the consideration of the sale was the advancing by the Maltz Company of 25 per cent of each of the claims against defendant. A similar notice was sent to all the creditors, except to some who had previously agreed in writing and who had accepted a composition of 25 per cent of their respective claims in full. The 25 per cent was to be paid to creditors regardless of whether or not a complete satisfaction of their respective claims was given. Certain creditors did accept this composition but all creditors were not required to join in the composition in order to receive 25 per cent. Plaintiff was one of the creditors who did not agree to the composition.

It is well established that the only authority for the issuance of an attachment writ is the existence of some of the statutory grounds stated in Cahill's St. ch. 11, ¶ 1. The record fails to show the existence of any grounds for attachment mentioned in the statute.

The Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1, provides that the vendee shall, in good faith, at least five days before the consummation of such sale, receive from the vendor a written statement under oath of the vendor, containing a full and complete list of the cred-

itors of the vendor, their addresses and the amounts owing, and that the vendee, at least five days before taking possession, cause to be delivered to each creditor a notice in writing of the proposed purchase of the goods and chattels, the price, terms and conditions.

But plaintiff contends that during the five-day period referred to in the statute it had the right to attach. We cannot agree with this. Had the legislature intended an attachment to lie during the five-day period in which the sale in bulk is in suspense, it could have been so stated in the act. To hold with plaintiff on this point would mean that any creditor who desired to collect his claim could prevent a sale under the Bulk Sales Act, although it had been fully followed, by merely filing an attachment during the five-day period. Such a result should not be entertained for a creditor has no right to control an individual in the sale of his merchandise in the absence of fraud. The cases cited by plaintiff to sustain its contention are not in point.

Plaintiff contends in this court that the Bulk Sales Act was not complied with in that notice had not been sent to all the creditors of defendant. We might say that even if this were so, "granting writs of attachment in cases where only legal or constructive fraud is shown is outside of the general scheme and purpose of the Attachment Law." *Weare Commission Co. v. Druley,* 156 Ill. 25. To the same effect is *Wadsworth v. Laurie,* 164 Ill. 42. See also *Nelson & Co. v. Leiter,* 190 Ill. 414; *United Paper & Trading Co. v. Allen,* 222 Ill. App. 261, holding that a fraud in law, or constructive fraud, is not ground for attachment. A failure to comply with the terms of the Bulk Sales Act does not render a sale void, but voidable only as to creditors. *Wende v. Zimmer,* 189 Ill. App. 490.

But even if this were not the law, the record shows that notice was sent to all the creditors of defendant, including plaintiff, with the exception of those actu-

ally participating in the sale and who had in writing previously agreed to the composition and waived notice of the sale.

This was a compliance with the statute. The purpose of the act is to protect creditors by giving them notice of the proposed sale so that they may take such action as they desire. The rights of a creditor who has been given the required notice are not prejudiced by the fact, if it should be the fact, that another creditor has not received the notice. *McConnell v. Brace-Beluche & Co.*, 264 Ill. App. 72; *Ritter v. Wray*, 45 Pa. Super. Ct. 440.

Braude represented all the creditors who participated in or had knowledge of the sale and accepted the composition. He testified that he received their consents to this sale. Under such circumstances they cannot say that the sale was fraudulent and void simply because the notice did not comply with the statute. *Palo Sav. Bank v. Cameron*, 184 Iowa 183.

The sale complied with all the requirements of the Bulk Sales Act and the proceeds derived therefrom went to the creditors in equal pro rata amounts. Such a sale must be considered as being made in good faith and free from any fraudulent character.

We hold that the record fails to show any grounds for the issuance of the attachment writ and the decision quashing the same was proper, and the judgment of the municipal court is affirmed.

*Affirmed.*

MATCHETT, J., concurs.

MR. JUSTICE O'CONNOR took no part in the consideration of this case.