Zenith Radio Distributing Corporation, Appellee, v. H. E. Mateer, Appellant.

Gen. No. 9,684.

Heard in this court at the May term, 1941. Opinion filed August 7, 1941.

ELWIN S. WADSWORTH, of Dixon, for appellant.

WARNER & WARNER, of Dixon, for appellee; MOREY C. PIRES, of Dixon, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The Zenith Radio Distributing Corporation started a suit before a justice of the peace in Lee county, against H. E. Mateer, to recover a balance due on a promissory note of $236.70. At the hearing before the justice, judgment was entered in favor of the plaintiff. An appeal was taken by the defendant to the circuit court of Lee county, where judgment was again entered in favor of the plaintiff, and against the defendant for $236.70. It is from this judgment that the appeal is prosecuted.

It is not contended that the defendant, H. E. Mateer, was personally liable on the note as a signer of the same, but that this note represented the sale price of goods sold to Robert A. Conger, and that Robert A. Conger, in violation of the Bulk Sales Law of the State of Illinois, transferred a one-half interest in and to the business which he was operating, to H. E. Mateer, and that the Bulk Sales Law was not complied with, therefore Mateer was liable to the plaintiff for the balance due in the sale of the merchandise.

The theory upon which the case was tried is stated by the appellee in the second paragraph of their brief, as follows: ''This action was brought by the Zenith Radio Distributing Corporation, a creditor of Robert A. Conger, against Harold E. Mateer as purchaser of one-half of the assets of the business operated by Robert A. Conger, on the ground that the sale and transfer from Robert A. Conger to Harold E. Mateer, is fraudulent and void, as against the respondent for failure to comply with the terms of the Bulk Sales Act.''

The material facts in the case are not in dispute. - The appellant admits that he bought a 50 per cent

interest in the business of Conger, but denies that there was a partnership (which is immaterial in this case). He admits that he did not attempt in any manner, to comply with the Bulk Sales Law. However, the appellant seriously insists that the Bulk Sales Law is not applicable in this case, as Mateer, the appellant, did not purchase the *major* part of Conger's business.

Paragraph 78, chapter 121½ of Smith-Hurd's Illinois Annotated Statutes [Jones Ill. Stats. Ann. 121.01] provides as follows: "That the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business shall be fraudulent and void as against the creditors of the said vendor, unless the said vendee shall, in good faith, at least five (5) days before the consummation of such sale, transfer or assignment demand and receive from the vendor a written statement under oath of the vendor or a duly authorized agent of the vendor having knowledge of the facts, containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained, and if there be no creditors, a written statement under oath to that effect; and unless the said vendee shall at least five days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price, or consideration of [or] any evidence of indebtedness therefor, in good faith, deliver or cause to be delivered or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in the said statement or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said goods and chattels and of the price, terms and

conditions of such sale : Provided, however, that it shall be lawful for the vendee to pay to the vendor so much of the purchase price as shall be in excess of the total amount of the indebtedness of the vendor, before the expiration of the five days hereinbefore referred to.'' It is conceded in this case that there was no attempt made to comply with the statute, so the question involved is whether the sale of 50 per cent of Conger's business to Mateer is a major part of Conger's business. Our attention has not been called to any case where this question has been decided. Both appellant and appellee have cited and rely on the case of *Fawver v. Flesher,* 208 Ill. App. 21. This question is not decided in the case, but from the language used by the court, it seems to indicate that 50 per cent of a business would not be a major part thereof. The appellee has cited several cases from other jurisdictions to sustain their contention that the sale of 50 per cent of a business is a major part thereof. A reading of these cases discloses that in none of the States where this question was presented to the court, does their statute provide as our statute does in the Sales Act, that when a major part or the whole of the business is sold, the sale is void as to creditors. The Sales Act of Tennessee provides ''the sale of any portion shall be void'' etc. In West Virginia and Michigan the statutes are practically the same and provide ''a sale of part or all'' shall be void as to creditors. The Texas statute provides ''that all or any portion thereof,'' shall be void as to creditors. In Washington the statute provides ''any sale or substantial interest therein,'' is void as to creditors. Nowhere have we found a statute where it is provided as ours, that when a major part or all of the business is sold, it is void as to creditors.

The Bulk Sales Act is in derogation of the common law and penal in nature, must be strictly construed. (*Coon v. Doss,* 361 Ill. 515, page 516.) The word

*major* has a clear and definite meaning and the court in interpreting this statute must give this word the ordinary meaning, which is defined to be, "greater or larger." Giving the word major, its accepted meaning in the present case, the sale of 50 per cent of Conger's business to the appellant, was not the major part of the business.

The sale of 50 per cent of the business in the present case was not in violation of the Bulk Sales Law. The judgment of the trial court is hereby reversed.

*Judgment reversed.*