PASTIMES PUBLISHING COMPANY, Plaintiff, *v.* ADVERTISING DISPLAYS *et al.*, Defendants—(MIDLAND PAPER COMPANY, Defendant-Appellant— JUPITER PRESS, INC., Defendant-Appellee.)

(No. 56064;

First District—June 28, 1972.

*Rehearing denied July 26, 1972.*

Kessler, Greenhouse and Brusso, of Chicago, (Hyman J. Addison and Mark A. Greenhouse, of counsel,) for appellant.

Ettelson, O'Hagan, Ehrlich & Frankel, of Chicago, (Robert F. Nix and John F. Salmon, of counsel,) for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Pastimes Publishing Company (hereinafter Pastimes) filed a complaint and application for supervision of liquidation naming various persons, businesses and corporations who have a claim or interest as creditors of Pastimes. Upon Pastimes' motion the court entered an order enjoining any action by Pastimes' creditors without leave of the court. Among the creditors were defendant-appellant, Midland Paper Company (Midland) and defendant-appellee Jupiter Press, Inc. (Jupiter).

Midland filed a motion for summary judgment and for a turnover order wherein it stated that it had a perfected security interest in an account receivable of $27,636 based upon a sale by Pastimes to Saalfield Published Company (Saalfield). Jupiter objected to the motion and brought in Saalfield as an additional party defendant. Saalfield filed an

answer admitting that it owed plaintiff $27,636 and that it was willing to pay said sum to the court pending the resolution of the controversy.

The trial court denied Midland's motion for summary judgment and set the matter for a hearing. The court entered an order finding that the sale of Pastimes' property to Saalfield was in violation of Section 6—109 (1) of the Commercial Code and constituted a bulk sale and that the proceeds are subject to the lien of the creditors of Pastimes under Section 6—105 of the Commercial Code, which lien has priority over the lien created and perfected under the security interest given by Pastimes to Midland. On appeal Midland contends:

(1) The trial court erred in finding that the sale to Saalfield was a bulk sale in violation of the bulk transfers act.

(2) The trial court erred in finding that the proceeds of the sale to Saalfield were subject to the lien of all Pastimes' creditors.

(3) The perfected security agreement between Pastimes and Midland was effective against all Pastimes' creditors.

The facts are as follows:

Pastimes pretty much ceased doing business in 1967. On August 23, 1968, Pastimes sold its entire inventory of books to Saalfield for approximately $27,000. Pastimes owed Midland over $34,000 for prior purchases. On September 16, 1969, Pastimes assigned the Saalfield account receivable to Midland and executed a security agreement. On October 24, 1968, the financing statement was filed with the Illinois Secretary of State. No notice was sent to Pastimes' creditors informing them of the sale of Pastimes' inventory.

■■ Midland's first contention was that the trial court erred in finding that the sale to Saalfield was a bulk sale in violation of the bulk transfers act. Section 6—102 (1) of the Commercial Code provides:

"A 'bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (Section 9—109) of an enterprise subject to this Article." Ill. Rev. Stat. 1969, ch. 26, par. 6—102.

Pastimes sold its entire inventory to Saalfield in 1968. An officer of Pastimes testified that Pastimes had virtually ceased doing business in 1967. The sale was not in the ordinary course of business. Consequently, the sale of Saalfield was a bulk sale.

Section 6—105 of the Commercial Code provides:

"In addition to the requirements of the preceding section, any bulk transfer subject to this Article except one made by auction sale (Section 6—107) is ineffective against any creditor of the transferor unless

at least 10 days before he takes possession of the goods or pays for them, whichever happens first, the transferee gives notice of the transfer in the manner and to the persons hereafter provided (Section 6—106)." Ill. Rev. Stat. 1969, ch. 26, par. 6—105.

No notice was sent to Pastimes' creditors and therefore the sale to Saalfield violated the bulk transfers act.

Midland's second contention was that the trial court erred in finding that the proceeds of the sale to Saalfield were subject to the lien of all Pastimes' creditors.

The Illinois Code Comment to Section 6—104 of the Commercial Code states that the remedies available to creditors under Article 6 are left to the general Illinois law. The court was correct in looking outside of Article 6 of the Commercial Code to find the appropriate remedy.

■■■ In *Marshall Sav. & Loan Ass'n v. Chicago Nat. Bank*, 56 Ill. App.2d 372, 206 N.E.2d 117, at page 378, the court held:

"The essential elements of equitable liens include (1) a debt, duty or obligation owing by one person to another. *Watson v. Hobson*, 401 Ill. 191, 81 N.E.2d 885, and (2) a res to which that obligation fastens which can be identified or described with reasonable certainty. *Freeman v. Freeman*, 314 Ill.App. 641, 42 N.E.2d 315; *Hazenwinkle Grain Co. v. McComb*, 116 Ill.App. 541. If the res to which the lien attaches is converted into money, the court in a proper case will treat the money as substituted for the property. *Elgin Lumber Co. v. Langman and Altman*, 23 Ill.App. 250, 25 I.L.P. Liens, Sec. 5."

■■ The essential elements for the imposition of an equitable lien were present in the instant case. There was a debt owed by Pastimes to Jupiter and the other creditors. The books constituted the res which was converted into money. The trial court did not err in subjecting the proceeds of the bulk sale to the lien of Pastimes' creditors.

■■ Midland's third contention was that its perfected security agreement with Pastimes was effective against all Pastimes' creditors. Under sections 6—104 (1) and 6—105 of the Commercial Code, a bulk transfer without notice to the transferor's creditors is ineffective against any creditor of the transferor. (Ill. Rev. Stat. 1969, ch. 26, par. 6—104 (1), par. 6—105.) Ineffective means voidable at the instance of a creditor of the transferor. Midland and Pastimes failed to give notice to creditors as required by sections 6—105 and 6—104 of the Commercial Code and consequently the sale of Saalfield was ineffective against Pastimes creditors who without notice of the assignment were unable to protect their claims against Pastimes.

Since the sale was ineffective against Pastimes' creditors, nothing was

conveyed to Saalfield out of which an account receivable could have come into existence. Midland does not possess a perfected security interest in the account receivable which is good against Pastimes' creditors.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.