WIKELUND WHOLESALE COMPANY, INC., Plaintiff-Appellee, v. TILE WORLD FACTORY TILE WAREHOUSE et al., Defendants.—(RUBBER LININGS CORPORATION et al., Defendants-Appellants.)

First District (2nd Division)    No. 76-1426

Opinion filed January 24, 1978.

PUSATERI, J., concurring in part and dissenting in part.

Fortes, Eiger, Epstein & Skirnick, of Chicago (Lawrence H. Eiger and Maria A. Skirnick, of counsel), for appellants.

Edward S. Margolis, of Teller, Levit & Silvertrust & Louis I. Kessler, both of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from a judgment entered by the circuit court of Cook County in favor of plaintiff Wikelund Wholesale Company, Inc., and against defendants Rubber Linings Corporation and Harold Trilling. This judgment followed a bench trial of plaintiff's action against defendant pursuant to which (1) defendant Rubber Linings Corporation was found to have violated the Illinois bulk transfers act (Ill. Rev. Stat. 1975, ch. 26, par. 6—102 *et seq.*), and (2) defendant Harold Trilling, as "alter ego" of defendants Tile World Factory Tile Warehouse, a corporation, and Rubber Linings Corporation, were found to have unlawfully exercised dominion and control over merchandise belonging to plaintiff in the amount of $4,864.66.

Plaintiff, distributors of building materials and floor covering, allegedly delivered various materials to defendant Harold Trilling and subsequently sent invoices to Trilling for the goods delivered. Plaintiff apparently was never paid in full for the goods delivered. Trilling's nonpayment prompted plaintiff's initiation of an action in the circuit court

of Cook County. Plaintiff's action contained three counts. The first count sought the balance due and owing for goods, wares, and merchandise sold and delivered by plaintiff to defendant, plus interest, in the amount of $5,239.66. Count II alleged that the inventory of defendant Tile World Factory Tile Warehouse (of which Trilling had been vice-president and shareholder) was transferred to defendant Rubber Linings Corporation (in which Trilling had an interest) in violation of the Illinois bulk transfers act in that Rubber Linings Corporation failed to (1) require Tile World Factory Tile Warehouse to schedule a list of creditors and (2) notify plaintiff of the bulk transfer. Count II further alleged that defendant Rubber Linings Corporation had custody of substantial amounts of plaintiff's merchandise but refused to pay for said merchandise and is, therefore, liable to plaintiff in the amount of $4,864.66. Count III alleged that defendant Trilling was the "alter ego" of the defendant corporations and, as such, should be held personally liable for the balance due and owing to plaintiff in the amount of $4,864.66.

A bench trial ensued and the totality of the testimony was supplied by defendant Trilling and Donald Muscavitch, credit manager of Wikelund Wholesale Company. The testimony reflected that plaintiff sold merchandise to Tile Brand Distributors, Inc., Cicero, Illinois, and Tile World of Madison and Sheboygan, Wisconsin. Furthermore, the testimony established that $1,500 was paid plaintiff by Factory Tile Warehouse, Inc., checks signed by defendant Harold Trilling, leaving a balance due plaintiff in the amount of $4,864.60. Further established by the testimony was the fact that defendant Trilling had interests in various corporations, three of which were engaged in the tile business.

At the completion of the evidence the court entered an order finding in favor of defendant as to count I of plaintiff's complaint and finding in favor of plaintiff with respect to counts II and III. It is from the orders entered against defendants Rubber Linings Corporation and Harold Trilling that defendants appeal.

The trial court found, pursuant to plaintiff's allegations, that Rubber Linings Corporation violated the Illinois bulk transfers act (Ill. Rev. Stat. 1975, ch. 26, par. 6—102 *et seq.*), based upon a transfer of inventory from Tile World Factory Tile Warehouse to Rubber Linings Corporation. It is clear that if we are to uphold the trial court's finding in this regard we must first find the bulk transfers act applicable to the case at bar. This we are unable to do.

■■ A bulk transfer is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory of an enterprise subject to the bulk transfers act. (Ill. Rev. Stat. 1975, ch. 26, par. 6—101.) A transfer of the "major part" of inventory has the clear and definite meaning of the

transfer of "greater than fifty percent" of inventory. *Zenith Radio Distributing Corporation v. Mateer* (1941), 311 Ill. App. 263, 35 N.E.2d 815. See *Continental Casualty Co. v. Burlington Truck Lines, Inc.* (1966), 70 Ill. App. 2d 405, 217 N.E.2d 293.

■■ The testimony adduced in the case at bar does not admit of a transfer in excess of 50 percent of the Tile World Factory Tile Warehouse inventory to Rubber Linings Corporation. In fact, Harold Trilling's uncontradicted testimony reflects that "about fifty percent" of the inventory was transferred. This testimony is insufficient upon which to base a finding of a transfer of a "major part" of inventory for purposes of the application of the bulk transfers act. Consequently, the finding of the circuit court, that defendant Rubber Linings Corporation violated the Illinois bulk transfers act, must be reversed.

The circuit court further found that defendant Harold Trilling was the principal and "alter ego" of various corporations, including defendant corporations and, consequently, was liable for the unlawful exercise of dominion and control over merchandise belonging to plaintiff. In reaching this result, the circuit court found a debt due plaintiff and disregarded the corporate nature of various businesses in which Trilling had interests.

There is no basis for disturbing this finding of the circuit court. Trilling's testimony is somewhat uncertain as to the number of corporations in which he had an interest, however, it is clear that those corporations involved in the tile business were managed with a disregard for their corporate status. Trilling, while testifying at trial, never denied that he used accounts of his various corporations to pay the debts of any one corporation. His testimony also revealed that the money received by one corporation in which he had an interest might come to rest in the accounts of another of his corporations. This commingling of funds was explained by Trilling as an attempt to pay the debts owed.

■■■ Trilling's unusual scheme of corporate accounting may have increased his ability to satisfy creditors, but it also requires us to disregard the corporate status of Trilling's businesses engaged in the tile business and affirm the circuit court's imposition of personal liability upon Trilling. It is elementary that the separate corporate status of subsidiary or other affiliated corporations will not be recognized when the accounts of the corporations are intermingled. (Henn, Handbook Of The Law Of Corporations And Other Business Enterprises §148 (1970).) This intermingling is clearly evident from Trilling's testimony. Consequently, the incorporation of Trilling's various business interests cannot be utilized to promote injustice and defeat a recovery by plaintiff. The doctrine that a corporation is a legal entity existing separate and apart from the person composing it is a legal theory used for the convenience of the business

world. The concept cannot, therefore, be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of this policy, will be disregarded by the courts. *State Bank v. Benton* (1974), 22 Ill. App. 3d 1007, 317 N.E.2d 578.

Based upon the facts of this case and the principles of law applicable thereto we hold (1) that the circuit court erred in finding that defendant Rubber Linings Corporation violated the Illinois bulk transfers act, and (2) that the circuit court correctly found Harold Trilling liable to plaintiff Wikelund Wholesale Company, Inc. Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

DOWNING, P. J., concurs.

Mr. JUSTICE PUSATERI, concurring in part and dissenting in part:
This appeal initially confronts us with determinations concerning the construction of article 6 (bulk transfers act) of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 6—101 *et seq.*), a statute which has been criticized as having not been drafted in clear, concise and explicit language, and further criticized on the grounds that its looseness and over-flexibility is out of place in a technical formal statute designed to protect creditors against fraudulent conveyances and dissipation of proceeds.[1] The second major determinations concern the facts, circumstances and requirements necessary to employ the remedy of piercing a corporate veil, which remedy has been described as "one of the most awesome judicial remedies,"[2] and the consequences of so doing in relation to the imposition of individual personal liability.

I also wish to state preliminarily, regarding this appeal, that the trial record is far from being clear and certain. There is much confusion arising out of the indiscriminate interchange of corporate names, identities and locations, both by the witnesses and counsel. In an attempt to make the facts of the case more meaningful, I feel that it is necessary to devote more than the ordinary amount of time, detail and space to factual recitation and analysis. I also employ an extensive use of quotations both by way of clarification and by way of furnishing examples of the lack of clarification with which we are confronted. The transactions in issue all took place during the years 1971, 1972 and 1973. The Uniform

---

[1] Rapson, *Article 6 of the Uniform Commercial Code: Problems and Pitfalls in Conducting Bulk Sales*, 68 Com. L.J. 226 (1963); Hawkland, *The Trouble with Article 6 of the U.C.C.: Some Thoughts About Section 6—102*, 81 Com. L.J. 83 (1976); Hudak and King, *Reforming and Rewriting Article 6 of the U.C.C.*, 81 Com. L.J. 284 (1976).

[2] Broida, *The History of the Development of the Remedy of "Piercing the Corporate Veil,"* 65 Ill. B.J. 522, 522 (1977).

Commercial Code and bulk sales provisions became effective in Illinois on July 1, 1962. Ill. Rev. Stat. 1971, ch. 26, par. 10—101.

The plaintiff-appellee Wikelund Wholesale Company, Inc., a corporation (hereinafter Wikelund) filed a three-count complaint for a balance due in the amount of $4,864.66:

    I. Count I seeks recovery against Tile World Factory Tile Warehouse, a corporation (hereinafter Tile World Factory), for goods, ware and merchandise sold and delivered.

    II. Count II seeks recovery of the same sum from Rubber Linings Corporation (hereinafter Rubber Linings), alleging that it had violated the Bulk Transfers Act by receiving the inventory of Tile World Factory, without requiring the latter corporation to schedule a list of its creditors (Ill. Rev. Stat. 1971, ch. 26, par. 6—104) and without giving notice to plaintiff Wikelund of the transfer (Ill. Rev. Stat. 1971, ch. 26, par. 6—105).

    III. Count III seeks recovery against the defendant, Harold Trilling, individually (hereinafter Trilling), as the alter ego of various corporations, including the defendants Tile World Factory and Rubber Linings, asserting that Trilling "manipulated, transferred, and commingled" the merchandise sold to Tile World Factory with the merchandise of Rubber Linings.

The trial court, sitting without a jury, found as to:

    I. Count I, for the defendant Tile World Factory, that it was not liable for any amount alleged due and owing:

    II. Count II, for the plaintiff Wikelund, that the defendant Rubber Linings was liable for the full sum of $4,864.66, for "violating the Bulk Sales Act."

    III. Count III, for the plaintiff Wikelund, that the defendant Trilling was jointly and severally liable with defendant Rubber Linings.

Defendants Rubber Linings and Trilling prosecute this appeal from the judgments entered as to counts II and III. Plaintiff Wikelund did not file a cross-appeal as to the judgment entered on count I, and in its brief, plaintiff Wikelund presented no argument on the matters raised "on Count II as to the liability of Rubber Linings."

At the trial, plaintiff presented the testimony of its credit manager, Donald Muscavitch, who testified that: plaintiff Wikelund sold material to the "various stores" of Trilling; that the invoices he had in court were for sales to "Sheboygan Tile World"; that he talked to defendant Trilling or his office on various occasions regarding the payment of these invoices; that some of the invoices were also for the account of Tile Brand Distributors, Inc.; that he received "payment on account on checks signed by Mr. Trilling" and they were credited on the account of Tile Brand

Distributors; that there still remains due and owing "$989.99 on the Tile Brand Distributors" account and "$3,874.67 on the Tile World of Sheboygan."

On cross-examination, Mr. Muscavitch testified that: one set of the invoices was for material sold to "Tile World, 706 West 8th Street, Sheboygan, Wisconsin"; that as far as he knew "Tile World of Sheboygan, Wisconsin, was Tile World Factory Warehouse"; that one of the invoices in the second set of invoices was for material shipped to "Tile World, Madison, Wisconsin," and it said "Sold to Tile Brand Distributors, Cicero, Illinois"; that the merchandise in the second set of invoices was sold to Tile Brand Distributors of Cicero, Illinois. In response to a concluding question as to his understanding as to "who you're suing," he replied, "You have me a little lost now * * *."

As its second and final witness, plaintiff Wikelund called the defendant Trilling as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60). Trilling testified that: during the period in question, 1971 through 1973, he was vice president of "Factory Tile Warehouse," there were two separate corporations involved, and that they were incorporated in the States of Illinois and Wisconsin; the other corporations were Tile Brand, Inc., and Tile Brand Distributors, and the latter was incorporated in Illinois; he was a shareholder of "these corporations" and could "guess" that he owned between 40 and 50 percent of the stock; that he "had an interest in Rubber Linings" and had an interest in about 20 corporations but only three were in the tile business; "Factory Tile" was a corporation in Illinois and Wisconsin; there were three corporations in Illinois under the name "Factory Tile Warehouse" and two in Wisconsin under that same name; each store was incorporated separately in each State; he never spoke to Wikelund and never bought anything personally from them; he did not remember when he acquired an interest in Tile Brand Distributors of Illinois and he gave it up completely and turned the stock over to his former partner; he had "an interest in Rubber Linings" and that there was no connection whatsoever between "Rubber Linings and the Sheboygan store"; he was a stockholder in the Sheboygan store but he closed it up "maybe sometime in 1973"; Rubber Linings did receive "materials, supplies or other inventory from the Sheboygan store when the Sheboygan store closed"; and he did not comply with the notice requisites of the bulk sales act because "nothing from Wikelund Wholesale was transferred anywhere."

On examination by his own attorney, defendant Trilling testified that: he had an interest in a company "Factory Tile Warehouse, an Illinois corporation," and there is also a "Factory Tile Warehouse, a Wisconsin corporation," and that on occasion Factory Tile Warehouse, a Wisconsin corporation, would order goods from the plaintiff Wikelund; he "had an

interest" in a company known as Rubber Linings Corporation, an Illinois corporation; after a while the Wisconsin corporation ceased operations and at that time Rubber Linings took back the merchandise they sold to the Wisconsin corporation, but Rubber Linings did not take back any material belonging to the plaintiff Wikelund, because the Wisconsin corporation "didn't have a dollar's worth of Wikelund's merchandise in the place"; he has never done business under the name of Harold Trilling.

At the conclusion of defendant Trilling's testimony, plaintiff's group invoices were received in evidence, and both parties rested. To further burden an unclear record, these invoices were shown to be variously addressed as follows:

| SOLD TO: | SHIP TO: |
|---|---|
| Tile World<br>Sheboygan, Wisconsin | |
| Tile Brand Distributors, Inc.<br>Cicero, Illinois | Tile World<br>Sheboygan, Wisconsin |
| Tile Brand Distributors, Inc.<br>Cicero, Illinois | Will order out same<br>Sheboygan, Wisconsin |
| Tile Brand Distributors, Inc.<br>Cicero, Illinois | Tile World<br>Madison, Wisconsin |
| Tile World<br>Appleton, Wisconsin | |

Defendant Rubber Linings contends on appeal that the trial court's ruling that it had violated the bulk transfer provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, pars. 6—104, 6—105) was erroneous as a matter of law. It is appropriate, under the facts and

circumstances of this case, to consider fully and decide each of the five contentions of this defendant as submitted even though a prior determination may appear to obviate the necessity for consideration of a subsequent contention.

In analyzing the first three contentions of this defendant, it is proper to review the applicable statutory provisions. Uniform Commercial Code—Bulk Transfers (Ill. Rev. Stat. 1971, ch. 26, pars. 6—102(1), 6—102(3), 6—102(4)) provides as follows:

> "6—102. 'Bulk Transfer'; Transfers of Equipment; Enterprises Subject to This Article; Bulk Transfers Subject to this Article.
>
> (1) A 'bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (Section 9—109) of an enterprise subject to this Article.
> * * *
> (3) The enterprises subject to this Article are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell.
> (4) Except as limited by the following section all bulk transfers of goods located within this State are subject to this Article."

Specifically, defendant Rubber Linings first contends that the bulk transfers act does not apply since the Sheboygan, Wisconsin, Tile World (hereinafter Sheboygan Tile) store did not transfer a "major part" of its inventory to Rubber Linings. To aid in this determination, the "Illinois Code Comment" to subsection 6—102(1) (Ill. Ann. Stat., ch. 26, par. 6—102, Illinois Code Comment, at 618 (Smith-Hurd 1963)) states that "The term 'major part' has been literally construed to mean more than 50%," citing *Zenith Radio Distributing Corp. v. Mateer* (2d Dist. 1941), 311 Ill. App. 263, 35 N.E. 2d 815.

In the *Zenith Radio* case, the court stated that the sale of 50 percent of the business was not the major part of the business and the sale of 50 percent was not in violation of the bulk sales law. (Ill. Rev. Stat. 1939, ch. 121½, par. 78.) The only evidence in the case at bar regarding the amount of inventory that the Sheboygan Tile store transferred to Rubber Linings was Trilling's testimony that "about around fifty percent" of the store's inventory was transferred. I find that this transfer was not a transfer of a "major part" of the store's inventory, and was not in violation of the bulk transfers act. Ill. Rev. Stat. 1971, ch. 26, par. 6—102(1); *Zenith Radio.*

The defendant Rubber Linings' second contention is that the bulk transfers act does not apply since plaintiff Wikelund did not prove that the "principal business" of the Sheboygan Tile store was the sale of merchandise from stock. (Ill. Rev. Stat. 1971, ch. 26, par. 6—102(3).) A

study of the record in this regard sustains this contention of the defendant, for although there was some testimony to the effect that the store was engaged "in the sale of merchandise from stock," there was no direct evidence or testimony that this was the store's "principal business" as required by the act. Ill. Rev. Stat. 1971, ch. 26, par. 6—102(3).

Rubber Linings' third contention is that the bulk transfers act does not apply since the goods allegedly transferred were not located in Illinois at the time of the transfer. In this regard, it must be re-emphasized that subsection 6—102(4) states "* * * all bulk transfers of goods *located* within this State are subject to this Article." (Emphasis added.) In addition, section 1—105(2) of the Uniform Commercial Code, entitled "Territorial Application of the Act; Parties' Power to Choose Applicable Law" (Ill. Rev. Stat. 1971, ch. 26, par. 1—105(2)) provides in pertinent part:

> "(2) Where one of the following provisions of this Act specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:
>
> * * *
>
> Bulk transfers subject to the Article on Bulk Transfers. Section 6—102."

It is undisputed that the goods at issue here were located in Wisconsin and that they were transferred by the Sheboygan Tile store. The case of *In re Central Metallic Casket Co.* (7th Cir. 1960), 273 F.2d 506, involved the bulk transfer of assets by an Illinois corporation to a successor Wisconsin corporation. There, as in the case at bar, the assets were located in Wisconsin at the time of the transfer. The court ruled that since the assets were not located in Illinois, the Illinois bulk sales act did not apply. Ill. Rev. Stat. 1953, ch. 121½, par. 78 *et seq.*

The Restatement (Second) of Conflict of Laws suggests that section 6—102(4) of the Uniform Commercial Code—Bulk Transfers act (Ill. Rev. Stat. 1971, ch. 26, par. 6—102(4)) be applied to choice of law questions arising under the Uniform Commercial Code—Bulk Transfers (Ill. Rev. Stat. 1971, ch. 26, par. 6—101 *et seq.*), and the courts should look to Restatement (Second) of Conflict of Laws §244-54 (1971) for assistance in applying section 6—102(4). Restatement (Second) of Conflict of Laws, Introductory Note, §§244-66, at 64 (1971).

Restatement (Second) of Conflict of Laws §244 (1971) provides:

> "§244. Validity and Effect of Conveyance of Interest in Chattel
>
> (1) The validity and effect of a conveyance of an interest in a chattel as between the parties to the conveyance are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the conveyance under the principles stated in §6.

(2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel, or group of chattels, at the time of the conveyance than to any other contact in determining the state of the applicable law."

Restatement (Second) of Conflict of Laws §244, Comment f, at 71 (1970), states:

"In determining the state of most significant relationship, and thus of the applicable law, the forum will consider other contacts in addition to the location of the chattel, or group of chattels, at the time of the conveyance. Thus, the forum will consider the domicil, nationality, place of incorporation and place of business of the parties. Also where it is understood that a chattel will be moved to a more or less permanent location following the conveyance, the forum will give consideration to the place of its intended destination."

The record in the case at bar fails to disclose the state of plaintiff's incorporation. It is also unclear whether the Sheboygan Tile store was a separate corporate entity, or whether it was any of the following corporations: Factory Tile Warehouse (a Wisconsin corporation); Factory Tile Warehouse (an Illinois corporation); Tile Brand Distributors, Inc. (an Illinois corporation). Rubber Linings was incorporated in Illinois.

The record does not provide direct evidence of the "place of business" of each of the various entities in issue. However, it is my finding and determination: (1) that the place of business of plaintiff Wikelund, the Sheboygan Tile Store, and Factory Tile Warehouse (a Wisconsin corporation) was Wisconsin; and (2) the place of business of Factory Tile Warehouse (an Illinois corporation) and Rubber Linings was Illinois.

Plaintiff Wikelund transacted business in Wisconsin and Michigan. The Sheboygan Tile store transacted business at least in Wisconsin. It is unclear whether Factory Tile Warehouse (a Wisconsin corporation) conducted business in both Wisconsin and Illinois or in just one of these states. The same is true of Factory Tile Warehouse (an Illinois corporation). Rubber Linings transacted business in both Wisconsin and Illinois, and I find that the place of the intended destination of the goods transferred from the Sheboygan Tile Store was Illinois.

On the basis of this record, I conclude that the State with the most significant relationship to the parties, the goods, and the conveyance is Wisconsin. Considering this finding in connection with the application of section 6—102(4) (Ill. Rev. Stat. 1971, ch. 26, par. 6—102(4)), it is again clear that the bulk transfers act (Ill. Rev. Stat. 1971, ch. 26, par. 6—101 *et seq.*) does not apply to the instant case.

The defendant Rubber Linings' fourth contention is that the plaintiff was not a creditor of the alleged transferor, Tile World Factory, and thus has no rights under article 6. Rubber Linings contends that only a creditor

of the transferor may assert a cause of action against the transferee under the bulk transfers act (Ill. Rev. Stat. 1971, ch. 26, par. 6—101 *et seq.*), and in this case the trial court specifically found under count I that the plaintiff Wikelund was not a creditor of the alleged transferor, Tile World Factory.

Cases decided under the former Illinois bulk sales law have held that its purpose was to provide protection to *creditors* of the vendor; "* * * to prevent the sale in bulk of a business so as to defraud and defeat the claims of those to whom the vendor might be *indebted.*" (Emphasis added.) *Winthrop Restaurant Co. v. Kournetas* (1st Dist. 1932), 265 Ill. App. 535, 538. In *Tipsword v. Doss* (3d Dist. 1933), 273 Ill. App. 1, 8, the court stated:

> "The Bulk Sales Act of 1913, Cahill's St. ch. 121a, §1 *et seq.*, only makes sales or transfers in bulk of the major part or the whole of the stock of merchandise, or other goods and chattels of vendors fraudulent as to those persons who were *creditors at the time of the sale or transfer*; and for this reason it was incumbent upon appellant to offer evidence to show that her judgment upon which execution issued was obtained upon indebtedness owing to her at the time such property was so transferred." (Emphasis added.)

See *Boxwell v. Lion Oil Co.* (1st Dist. 1928), 250 Ill. App. 127; *Lawndale Sash & Door Co. v. West Side Trust & Savings Bank* (1st Dist. 1917), 207 Ill. App. 3.

Under the Uniform Commercial Code—Bulk Transfers (1961 Ill. Laws), which replaced the former Illinois bulk sales law, only one Illinois decision can be found which discusses the purpose of the act. In *Palmeri v. Adams* (5th Dist. 1972), 4 Ill. App. 3d 881, 883, 280 N.E.2d 266, the court stated: "It is clear from the reading of the Bulk Sales Act, * * *, that its purpose is to regulate the rights and liabilities of the *transferor's creditor* and the transferee, each with respect to the other." (Emphasis added.)

On the basis of the foregoing authority, I conclude that only a creditor of the transferor has a cause of action under the bulk transfers act for alleged violations of that act. (Ill. Rev. Stat. 1971, ch. 26, par. 6—101 *et seq.*) Since the trial court found that plaintiff was not a creditor of the defendant Tile World Factory, the alleged transferor, under count I, plaintiff Wikelund does not have a cause of action for any purported violation of the bulk transfers act under count II. Ill. Rev. Stat. 1971, ch. 26, pars. 6—104, 6—105.

The defendant Rubber Linings' fifth and final contention is that even assuming *arguendo* that it was proven to be the transferee of the goods, and even assuming further that the plaintiff Wikelund is a creditor of the defendant Tile World Factory, the defendant Rubber Linings still cannot be found personally liable for the amount of the debt.

In this regard, reference should be made to the "Illinois Code Comment" to section 6—104 (Ill. Ann. Stat., ch. 26, par. 6—104, Illinois Code Comment, at 641 (Smith-Hurd 1963)), wherein it is stated:

"However, creditors may not proceed against the transferee upon the theory that by reason of the transfer he has personally assumed the obligations of the transferor. Grossfield & Rose Co. v. Zanni, 239 Ill. App. 442 (1st Dist. 1926); Chicago Specialty Shoe Co. v. Uhwat, 197 Ill. App. 460 (1st Dist. 1916)."

In the *Grossfield & Roe Co.* case, the court stated:

"Although a sale may be fraudulent and void, as against creditors, by reason of the Bulk Sales Act, it does not follow that the vendee immediately becomes a direct debtor so as to be liable, for example, in assumpsit, to the creditor. The fact that a sale is void as to creditors by reason of the Bulk Sales Act may be taken advantage of in proper proceedings by the creditor (*Ogden Ave. State Bank v. Cherry*, 225 Ill. App. 201; *Page v. Wright*, 194 Ill. App. 149), but that fact may in no way be said to give rise to a new obligation on the part of the vendee directly to the creditor, that is, such an obligation as may be enforced by the creditor against the vendee in a suit at law. *Chicago Specialty Shoe Co. v. Uhwat*, 197 Ill. App. 460." 239 Ill. App. 442, 446.

To the same effect is *Continental Casualty Co. v. Burlington Truck Lines, Inc.* (1st Dist. 1966), 70 Ill. App. 2d 405, 408, 217 N.E.2d 293, in which the court stated:

"Finally, it should be noted that a failure to comply with the provisions of the Bulk Sales Act gives no direct remedy by a vendor's creditors against the vendee, and does not make the vendee a debtor of the vendor's creditors."

*Grossfield & Roe Co.*, *Chicago Specialty Shoe Co.*, and *Continental Casualty Co.* were decided under the former Illinois bulk sales law, which provided that a transfer violative of its provisions would be "fraudulent and void." "Fraudulent and void" was held to mean "voidable." (*C. & E. Marshall Co. v. Leon* (1st Dist. 1932), 267 Ill. App. 242, 246.) Under the Uniform Commercial Code—Bulk Transfers, "fraudulent and void" was changed to the term "ineffective" (Ill. Rev. Stat. 1971, ch. 26, par. 6—104), which term has been held to mean "* * * voidable at the instance of a creditor of the transferor." (*Pastimes Publishing Co. v. Advertising Displays* (1st Dist. 1972), 6 Ill. App. 3d 414, 417, 286 N.E.2d 19.) See Ill. Ann. Stat., ch. 26, par. 6—104, Illinois Code Comment, at 636-37 (Smith-Hurd 1963).

Also to be considered is the fact that the Commissioners on Uniform State Laws, in promulgating this uniform act, provided an optional section 6—106 of the 1958 Official Text of the Uniform Commercial Code (U.C.C. §6—106 (1958 Official Text)), which reads as follows:

"[UCC §6—106. Application of the Proceeds. In addition to the requirements of the two preceding sections:

(1) Upon every bulk transfer subject to this Article for which new consideration becomes payable except those made by sale at auction it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor which are either shown on the list furnished by the transferor (Section 6—104) or filed in writing in the place stated in the notice (Section 6—107) within thirty days after the mailing of such notice. This duty of the transferee runs to all the holders of such debts, and may be enforced by any of them for the benefit of all.

(2) If any of said debts are in dispute the necessary sum may be withheld from distribution until the dispute is settled or adjudicated.

(3) If the consideration payable is not enough to pay all of the said debts in full distribution shall be made pro rata.]

*Note: This section is bracketed to indicate division of opinion as to whether or not it is a wise provision, and to suggest that this is a point on which State enactments may differ without serious damage to the principle of uniformity.*

*In any State where this section is omitted, the following parts of sections, also bracketed in the text, should also be omitted, namely:*

*Section 6—107(2)(e).*

*Section 6—108(3)(c).*

*Section 6—109(2).*

*In any State where this section is enacted, these other provisions should be also."*

The Illinois legislature, in failing to enact optional section 6—106 of the 1958 Official Text of the Uniform Commercial Code (U.C.C. §6—106 (1958 Official Text)), evidenced a legislative intent not to impose personal liability on the transferee in cases of this nature. See *American Express Co. v. Bomar Shoe Co.* (1972), 125 Ga. App. 408, 187 S.E. 2d 922.

In *American Express Co.*, the Court of Appeals of Georgia noted that optional section 6—106 "* * * has been construed to impose personal liability on a transferee who misappropriates or otherwise converts property subject to the Bulk Transfer Act. [Citations.]" *American Express Co. v. Bomar Shoe Co.* (1972), 125 Ga. App. 408, 410, 187 S.E.2d 922, 924. See Annot., 47 A.L.R. 3d 1114, 1142 (1973).

In the same case, upon a later appeal, the Court of Appeals of Georgia stated expressly:

"However, this Act permits only an in rem action against the transferred goods or the proceeds therefrom, not an in personam

action against the transferee \* \* \*." (*American Express Co. v. Bomar Shoe Co.* (1973), 127 Ga. App. 837, 837-38, 195 S.E. 2d 479, 480.)

I note that Georgia section 6—104 (Ga. Code §109A—6—104 (1973)) is substantially identical to section 6—104 as enacted in Illinois (Ill. Rev. Stat. 1971, ch. 26, par. 6—104), with minor variations, none of which affect the applicability of the reasoning of the Court of Appeals of Georgia in *American Express Co.* to the instant case.

On the basis of the aforementioned, I conclude that the transferee of goods is not personally obligated to the transferor's creditor for the amount of the transferor's debt under the bulk transfers act (Ill. Rev. Stat. 1971, ch. 26, par. 6—104) and I concur with the majority that the trial court erred in holding the defendant Rubber Linings liable under count II of the complaint for the amount allegedly owed plaintiff Wikelund by defendant Tile World Factory.

I respectfully dissent, however, from the conclusion of the majority that the circuit court correctly found Harold Trilling liable to plaintiff Wikelund under count III of the complaint. Regarding this count, the trial court placed emphasis on the word "commingling" in finding the defendant Trilling to be liable jointly with defendant Rubber Linings. The commingling specifically referred to in subparagraph (3) of count III of the complaint is that of the merchandise originally sold by the plaintiff to defendant Tile World Factory, with the merchandise of defendant Rubber Linings.

However, a study of the record discloses that there was no evidence or testimony that any of the merchandise returned to Rubber Linings by the Sheboygan Tile store was merchandise that had been sold to the defendant Tile World Factory by the plaintiff Wikelund. The only testimony bearing on this issue was given by the defendant Trilling, who testified that when the Sheboygan Tile store closed its doors, there was not even a "dollar's worth" of plaintiff's merchandise in the store and the only merchandise Rubber Linings took back was its own merchandise that it had sold or consigned to the Sheboygan Tile store. Plaintiff Wikelund presented no evidence whatsoever to sustain the allegations in count III of the complaint that its merchandise had been commingled with that of defendant Rubber Linings.

At the time it announced its findings, the trial court stated as follows:
"\* \* \* I find the issues in favor of the plaintiff in Count No. 3 as well as in Count No. 2, and enter a judgment on that finding against Harold Trilling individually for the reasons well pled and well proved in their allegation is said count regarding the transaction as just mentioned a moment ago in the rebuttal argument here presented by counsel.

This phrase is used over here, 'manipulated, transferred and commingled.'

Well, I find a commingling to be a more exact term and therefore Harold Trilling will be found to be liable jointly with Rubber Linings corporation in the same amount, namely that of $4,864.66 plus costs of this suit."

In spite of this express language of the trial court, plaintiff Wikelund asserts in its brief that the court's judgment in count III is not dependent upon commingling of assets, and furthermore, that the judgment against defendant Trillings is independent of the judgment against defendant Rubber Linings. Plaintiff then asserts that the trial court correctly pierced the corporate veil of defendant Trilling's "sham corporation."

In support thereof, plaintiff cites the case of *People ex rel. Scott v. Pintozzi* (1971), 50 Ill. 2d 115, 277 N.E.2d 844. However, in this case, our supreme court, although specifying when a corporate existence would be disregarded in order to impose liability personally on the real parties in a transaction under the alter ego principle, concluded that even when all of the elements of proof had been met "* * * such director or officer will be held liable for *obligations of the corporation.*" (Emphasis added.) (*Pintozzi*, at 129.) In the case at bar, the trial court found there was no obligation of the defendant Tile World Factory; both the majority opinion and this opinion have found that there was no obligation of the defendant Rubber Linings, and thus even if a corporate veil were to be pierced in this case, there is no obligation of any corporation for which defendant Trilling can be held liable.

Even assuming *arguendo* that there was such a corporate obligation, the evidence in the case at bar does not afford a sufficient basis to pierce the corporate veil. The evidence does not show that there was "* * * such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of a separate existence of the corporation would sanction a fraud or promote injustice * * *." *Pintozzi*, at 128-29.

The courts of our State have long held that a corporation is an entity separate and distinct from its stockholders, officers and directors, who are not, as a general rule, liable for the corporation's debts and obligations. (*Superior Coal Co. v. Department of Finance* (1941), 377 Ill. 282, 36 N.E.2d 354.) In *Superior Coal Co.*, our supreme court held the fiction of corporate entity is to be ignored with caution only when circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetuate a fraud. *Superior Coal Co.*, at 290; see *Flight Kitchen, Inc. v. Chicago Seven-Up Bottling Co.* (1st Dist. 1974), 22 Ill. App. 3d 558, 565, 317 N.E.2d 663.

In *Gowdy v. Richter* (1st Dist. 1974), 20 Ill. App. 3d 514, 528, 314 N.E.2d 549, the court stated:

"* * * Liability cannot be imposed on an officer or director of a corporation because he held that position at the time a certain action occurred, or because he, as an agent of the corporation, was the person the aggrieved party dealt with regarding a particular transaction. [Citation.] In addition to grounds of fraud and inadequate capitalization, the corporate veil will be pierced only when the existence between the director or officer and the corporation has attained 'such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice.' [Citation.]"

In *Bevelheimer v. Gierach* (1st Dist. 1975), 33 Ill. App. 3d 988, 992-93, 339 N.E.2d 299, the court stated:

"* * * A corporation is an entity separate from its shareholders and one who seeks to have the court apply an exception must seek that relief in his pleading and carry the burden of proving actual identity. [Citation.] * * * The general rule that a corporation and its stockholders are deemed separate entities is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights. [Citation.] * * * As stated in *American Trading & Production Corp. v. Fischbach & Moore, Inc.* (N.D. Ill. 1970), 311 F. Supp. 412, 416:

'For it has long been the law that the corporate entity is only ignored when the ends of justice require it. [Citations.] Some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction. [Citations.]' "

In the case at bar, plaintiff Wikelund has failed to sustain the proof requirements imposed by our courts. At most, the evidence was that defendant Trilling had "an interest" in the defendant Rubber Linings, that Rubber Linings sold or consigned goods to the Sheboygan Tile store, and that at the time this store was closed, Rubber Linings received its own goods back. There was no evidence that Trilling was actually a shareholder or officer of Rubber Linings and that he used this corporation as a subterfuge to perpetrate a fraud or commit a wrongdoing. I find that the trial court erred in finding against defendant Trilling under count III

of the complaint, and therefore respectfully dissent from the holding of the majority sustaining the finding of the trial court as to this count.

For the foregoing reasons, I would reverse the judgment of the trial court against the defendant Rubber Linings on count II, and would also reverse the judgment against defendant Harold Trilling on count III.