## W. M. EGAN

*v.*

## BRITISH AND FOREIGN MARINE INSURANCE COMPANY.

*Opinion filed December 18, 1901.*

1. MARINE INSURANCE—*owner of vessel is co-insurer as to uninsured part.* If a vessel is insured for a part, only, of its value, the owner is held to be a co-insurer as to such uninsured part, and in case of loss that part which is uninsured, which is called the owner's risk, is taken into consideration in fixing the proportion of the loss to be paid by the insurers.

2. SAME—*right of insurer to be subrogated to rights of assured against third party causing loss.* If an insurer pays a loss occasioned by the wrongful act of a third party he is subrogated to the rights of the insured, and may, in the name of the insured, prosecute a suit for re-imbursement against such wrongdoer.

3. SAME—*when right of insurer to receive portion of amount recovered from third party is not waived.* The fact that an insurer of a vessel did not participate in a libel suit against the vessel which caused the loss does not waive its right to its share, under its contract, of the amount recovered in the libel suit, where the insured began the suit without notifying the insurer of his action or requesting it to become a party to the proceeding.

*Egan v. British and Foreign Marine Ins. Co.* 88 Ill. App. 552, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county in favor of appellee, against appellant, growing out of a marine insurance policy issued by appellee on the interest of appellant in the hull of the propeller *Armour*, a lake freighter. The *Armour* was owned in equal parts by appellant, Egan, Capt. R. P. Fitzgerald and Philip D. Armour, and in September, 1889, by a collision with the steam barge *Marion*, was sunk in the St. Clair river, having a cargo of 89,000 bushels of

corn. The vessel had cost the preceding fall $135,000, and her cargo was worth about $36,000. The cargo was estimated as a total loss. The hull and the cargo were insured by separate and distinct policies. P. D. Armour's interest in the hull was not insured at all, and he was no party to any of the contracts of insurance upon which appellee relies. The interests of appellant and Fitzgerald in the hull were insured by distinct policies to each, so that their insurance on the hull had nothing in common. The cargo was insured in six companies, the total insurance being $35,600, and among them were the policies of appellant for $10,600. Fitzgerald's interest in the hull was insured for $30,000 in five companies and appellant's interest for $30,000 in five other companies, none of the companies carrying insurance on the hull for Fitzgerald's interest being the same as those carrying insurance on the hull for Egan's interest. Appellant was the agent of the appellee company at the time the insurance was written and at the time of the loss and adjustment.

While the vessel was still under water and no plans for raising her had been considered, the insurers of the cargo met with Capt. Fitzgerald, who represented the interests of the owners of the vessel, in March, 1890, and adjusted the loss on the cargo. The owners of the vessel had already filed a libel against the *Marion* for the damages resulting from the collision, and it was agreed between them that the value of the hull and cargo was $174,000, and that as the insurers were to pay $36,000 for the cargo, or practically that, they should have $\frac{36}{174}$ of whatever sum should be recovered from the *Marion* and the owners would receive $\frac{138}{174}$ thereof. The appellee company, being an insurer of the cargo, was, by its general agents, a party to that agreement. After this settlement and agreement the owners of the vessel had her raised, docked and repaired at a cost of $81,489.03. Of this amount $41,200 was the cost of raising and $40,289.03 was the total cost of repairs, but from the item of re-

pairs was deducted (one-third new for old) $13,429.61, so that the "net particular average and salvage expenses" were adjusted at the sum of $73,343.57. One-third of this amount, or $24,636.68, was the loss of appellant.

In April, 1899, appellant took from appellee a policy on his interest in the hull for $7500, and this policy was in force at the time of the collision. It was what is known among insurance people as a "valued policy," and contains the following provision: "The said vessel, tackle, apparel and other furniture are valued at $100,000, without any further account to be given by the insured to the insurers for the same. * * * The valuation of said vessel expressed in this policy shall be considered the value in adjusting loss under this policy. * * * In the event that the insurers pay any loss or damage under this policy, caused by the negligence, carelessness or misconduct of a third party, the valuation of the vessel expressed in this policy shall be considered the value in adjusting the respective claims of the insurers and insured in any moneys paid by or recovered from such third party." The policy contained the further provision: "It is agreed and understood that in case of any loss or damage uuder this policy, the insured, in accepting payment therefor, hereunder, hereby and by that act assigns and transfers all his, its or their right to recover for such loss or damage against any person, persons or corporation to this company, to inure to its benefit, but to the extent, only, of the amount of such loss or damage and the attendant expenses of recovery paid or incurred by this company; and any act of the insured waiving or transferring, or tending to defeat or decrease, any such right of recovery against any person, persons or corporation shall be a cancellation of the liability of this company for or on account of such loss or damage, and the expenses of recovery (if any) paid or incurred by the said company shall be a lien upon and shall be recoverable against the said vessel, tackle, apparel and other furni-

ture, or any part thereof, or against the insured, at the option of the insurer."

Pending the suit between the owners of the *Armour* and the *Marion*, the companies insuring the hull and the owners of the *Armour* adjusted the hull loss according to their contract, by which appellee paid to appellant $5543.26, being its proportion of appellant's loss above mentioned, and arrived at by taking appellant's interest in the boat, according to the fixed value, as $33,333.33. He had $30,000 insurance, and by the law of marine insurance was deemed to be an insurer himself of the difference between the amount of insurance and the value of his interest, so that in the computation it was treated as his full interest being insured. As his loss was less than $25,000, by the apportionment appellee was required to pay the amount above stated. This settlement was made November 11, 1890, and payment was made accordingly. On July 8, 1893, the owners of the *Armour* settled their libel against the *Marion* with the owners for $37,500, and after deducting expense of suit had $18,508.82 left. By the agreement between the insurers of the cargo and the owners of the *Armour,* $3929.21 of this amount was paid to them, leaving the net amount to the owners of the *Armour* $15,061.97, of which sum appellant, as his distributive share, received $5020.66. When Capt. Fitzgerald sent the distributive share arising from the settlement with the *Marion* to appellee, going to it as an insurer of the cargo, it replied, calling attention to its rights, under its policy insuring the hull, to be indemnified or subrogated to the rights of appellant against the owners of the *Marion*. This right appellant denied, and it is this matter that is the subject of this suit. The circuit court found that appellee was entitled to recover $1129.64, with interest, which together made $1466.79.

Appellant insists upon three grounds for reversing this case: First, that the insurers of the *Armour* did not prosecute a suit against the *Marion*, took no part in it,

in no way became liable for loss of costs connected with it, and are not therefore entitled to any part of the proceeds; second, that appellee is estopped to claim any right to this money by virtue of the settlement made between the insurers of the cargo and the owners of the *Armour* adjusting that loss and agreeing that part of the funds should go to the insurers of the cargo; third, that under the authorities the appellee, in equity and good conscience, was not entitled to recover of appellant until all of appellant's loss and damages by reason of the collision have been fully satisfied and paid, and that there still remains, after receiving all that was collected from the *Marion*, unsatisfied and unpaid damages to appellant of $2013.97. The above three grounds relied upon by appellant were presented to the trial court, where the cause was tried without a jury by three propositions of law, presenting said propositions respectively, all of which were refused by the court and exception taken and urged before the Appellate Court, and now renewed here.

C. E. KREMER, for appellant.

CHURCH, McMURDY & SHERMAN, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The suit was in assumpsit for money had and received by appellee for the use of appellant. The plea was the general issue. The libel against the *Marion* was brought by the owners of the *Armour* without in any manner consulting or asking the co-operation of the insurers of the hull. The insurance on the cargo was to the three partners of the *Armour*, and the insurers and insured had a common interest in the recovery, but the insurance of appellant was his individual affair, which may, to some extent, account for the readiness of all the cargo insurers to become participants in the libel. There is no evidence at all that any of these insurers, either on the

cargo or the hull, were consulted or advised of the intention of the owners of the *Armour* to prosecute a libel against the *Marion,* until some time after the suit had in fact been brought, and there is no evidence tending to show that appellee was ever, at any time, requested to become in any way active, either as a party or by contribution, or in any other manner, in the prosecution of the libel.

Appellant insists that the case of *Newcomb* v. *Cincinnati Ins. Co.* 22 Ohio St. 382, is directly in point and fully sustains his contention. In that case, on page 386, among the findings of facts, are the following: "That the defendant in error [the insurance company] was not a party to said suit; that it expressly declined and refused, on request, to contribute to or in any manner aid in its prosecution," and so the court holds it would be unconscionable to award any part of it to the defendant in error, who refused to hazard the costs of its recovery. If appellee had been requested to become a party to the suit, or had been requested to contribute to its prosecution and had refused to do so, then the cases would be analogous, but without that they are not, and we do not regard the case as supporting the contention of appellant. Appellant elected to prosecute this suit with his co-owners without regard to the action of appellee, and saw fit to make an agreement with those holding insurance on the cargo by which they were to receive back, from what they recovered from the *Marion,* an amount in proportion to what they paid to the total value of the vessel and cargo. They did this, and what was left was received by the owners in equal parts on account of loss to the hull, which was the property covered by appellee's policy.

The law applicable to marine insurance is of very early origin, and its principles, in those localities where it is called into operation, are well understood. It is too firmly established to now be questioned that when a ves-

sel is insured for a part, only, of its value, the owner is held to be a co-insurer as to such uninsured part, and in case of loss that part which is uninsured, and is called the owner's risk, is taken into consideration in fixing the proportion of their loss to be paid by the insurers. (Parsons on Mercantile Law,—2d ed.—537; 2 Parsons on Marine Ins. p. 405; Angel on Fire and Life Ins. sec. 249; *Trull* v. *Roxbury Ins. Co.* 3 Cush. 263; *Whitney* v. *Ind. Mut. Ins. Co.* 15 Md. 297; *North of England Ins. Ass.* v. *Armstrong*, L. R. 5 Q. B. 244.) In this case, the policy being a valued policy,—that is, the property insured being placed at an arbitrary value of $100,000 and appellant's interest being one-third of that amount,—and his insurance on his interest being to the amount of $30,000, he was, by the above rule, a co-insurer of his interest to the extent of $3333.33, which was properly taken into consideration in determining the proportionate amount to be paid by appellee on his loss under the $7500 policy. By this rule appellee had paid its full proportion of appellant's loss on the hull of this vessel, and by its contract with appellant it was agreed "that in case of any loss or damage under this policy, the insured, in accepting payment therefor, hereunder, hereby and by that act assigns and transfers all his, its or their right to recover for such loss or damage against any such person, persons or corporation to this company, to inure to its benefit, but to the extent only of the amount of such loss or damage and the attendant expenses of recovery paid or incurred by this company; and any act of the insured waiving or transferring, or tending to defeat or decrease, any such right of recovery against any person, persons or corporation shall be a cancellation of the liability of this company for or on account of such loss or damage." As his net share, after deducting all the expenses of the litigation, which amounted to more than the net amount collected, appellant received from the *Marion* $5020.65, and the question arises whether, under the law and the con-

tract between the parties, appellee is entitled to any portion of that amount.

As a rule applicable to inland as well as marine insurance, it is now well established that if an insurer pays a loss which is due to the wrongful act of another, the insurer is subrogated to the rights of the insured, and may, in the name of the assured, for his use, prosecute a suit against the wrongdoer and re-imburse himself. (*North of England Ins. Ass.* v. *Armstrong, supra; Hart* v. *Western Railroad Co.* 13 Metc. 99; *Hall* v. *Railroad Co.* 13 Wall. 367; *Mobile, etc. Railroad Co.* v. *Jurey,* 111 U. S. 584; *Phœnix Ins. Co.* v. *Transportation Co.* 117 U. S. 312; *Chicago and Alton Railroad Co.* v. *Glenny,* 175 Ill. 238.) So that under this rule the appellee would be entitled to recover without relying upon the provisions of the contract between the parties. In this case, however, appellant expressly contracted and agreed to assign to appellee all his right of action against the wrongdoer causing the loss; and in the case of *The Potomac* v. *Cannon,* 15 Otto, 630, where the owners of the *Lee* had filed a libel against the *Phœnix* for loss due to her fault, a release by the insurers to the extent of their proportionate share was held a good defense as against the libellant *pro. tanto.* In the policy in question was the further provision: "The expenses of recovery (if any) paid or incurred by the said company shall be a lien upon and shall be recoverable against the said vessel, tackle, apparel and other furniture, or any part thereof, or against the insured, at the option of the insurer." Under this clause of the contract there can be little question that if appellee had prosecuted a suit and recovered less than its costs, expenses and a sum sufficient to indemnify itself for the amount of loss paid, appellant would have been liable for the deficit,—to the extent, at least, of costs and expenses. Such being its contract, we are unable to understand upon what principle of law or equity appellant can now insist, after being allowed to deduct all the expenses, which were

enormous, from the amount collected, and only asked to account for the proportionate share of the net amount left, that it is inequitable or unfair that appellee should be accorded this remedy.

Appellant says, however, that with all the amounts that he did collect he is still a loser of more than $2000, and that therefore appellee should not be allowed any part of the amount collected from the *Marion.* Appellant seems to overlook another one of his agreements, in which it is stipulated that "in the event that the insurers pay any loss or damage under this policy, caused by the negligence, carelessness or misconduct of a third party, the valuation of the vessel expressed in this policy shall be considered the value in adjusting the respective claims of the insurers and insured in any moneys paid by or recovered from such third party." His total net loss on the hull was $24,636.69. On this he received from the insurance companies $22,173.03, and adding to it the ten per cent which he carried at his own risk, ($2463.66,) and adding to this the $5020.66 that he received from the *Marion,* and he has for his loss $29,657.35; or, deducting the portion that he carried at his own risk, and he would still have $27,193.69, or $2557 more than he lost, without any risk on his own part. Appellee only seeks to recover, and has only recovered, from this surplus fund arising from the *Marion,* a share in proportion to what it paid bore to the whole insurance on the hull, and under the terms of the contract and the law applicable to such insurance we regard the judgment as a correct legal conclusion.

The propositions of law were properly refused.

The judgment of the Appellate Court is affirmed.

· *Judgment affirmed.*