STATE BANK OF CERRO GORDO, Plaintiff-Appellee, *v.* JIM BENTON, Defendant-Appellant.

(No. 12165; ▮▮▮▮▮▮▮▮▮▮▮

Fourth District—October 10, 1974.

Monroe, Wilson, Dyar, Houchen, McDonald and Taylor, of Decatur (Kirtley E. Wilson, of counsel), for appellant.

Burger, Fombelle and Wheeler, P. C., of Decatur (Thomas M. Wheeler, of counsel), for appellee.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

This is an appeal by the defendant from a judgment of the circuit court of Macon County imposing individual liability against him for $9,174.20 for an indebtedness of "Jim Benton, Inc.," a corporation. In entering such judgment, the trial court pierced the corporate veil and imposed the individual liability. Its action in so doing the defendant says is against the manifest weight of the evidence. We disagree and affirm the trial court.

In 1964, Jim Benton incorporated Jim Benton, Inc., under the Illinois Corporation Act and was the owner of 249 shares of the 250 shares of the authorized stock of. the company. The defendant's wife was the owner of the other share and the amount contributed by way of capitali-

zation was $2,500. The corporation engaged in a used car business over the years and was dissolved in October, 1969. For its fiscal year ending March 31, 1969, the final corporation income tax return shows total gross receipts of $815,000 plus. During its corporate existence, Jim Benton advanced some $100,000 to the corporation for operating capital. The corporation supplied finance for individuals purchasing cars on installment contracts and during the years transacted considerable business with the plaintiff bank. The bank obtained a judgment against the corporation for the deficit on five installment contracts in default, demanded payment and then filed suit against Jim Benton individually.

No report of trial proceedings was available and accordingly a stand-by record was made certified by the parties and approved by the trial judge. From this it appears that during the transaction in question, the bank was aware that the contracts were being purchased from the corporation, that the bank records showed no personal guarantee by Jim Benton and that the bank had on several occasions requested financial statements from the corporation and from Jim Benton and his wife. Benton testified that the corporation ceased to do business in September, 1969, although his sworn answer to written interrogatories was that the corporation ceased to do business in October. He stated that he had during the course of the corporation's existence made loans approximating $99,000 and that after the corporation ceased to do business, he repaid himself $20,000 to $25,000 as repayments on loans which he had previously made. He did lease some cars personally and did not know why on his final corporation return the depreciation was taken by the corporation, and that all of the contracts in question here were made before the corporation was dissolved. He further testified that he signed all of the contracts and in fact signed all agreements made on behalf of the corporation. Although the corporation had a manager, he was the only one authorized to enter into any agreements for or on behalf of the corporation. He prepared and presented a financial statement furnished to the bank. He further testified that he did not transfer any of the corporate assets during the preceding year except that he had repaid himself some of the money he had loaned and that the amount would approximate $20,000 to $25,000. The contracts upon which the judgment was against the corporation were based on a retail installment contract form on which the name of Millikin National Bank at Decatur, Illinois, was printed, together with a dealer's assignment and agreement and a full recourse agreement signed by Jim Benton, Inc., by J. E. Benton. The name of Millikin National Bank was stricken from all of the agreements and instead a rubber stamp State Bank of Cerro Gordo was used on the front page.

On the facts here stated, the trial court pierced the corporate veil, held that the corporation was the alter ego of Jim Benton and imposed a judgment against him individually for this indebtedness of the corporation to the plaintiff. The defendant basically relies upon the proposition that there is nothing inherently wrong in an individual acting as a corporation and that a corporation is generally recognized as a legal entity separate and apart from its individual shareholders, be they one or many. The plaintiff accepts this rule but asserts that the corporate fiction may be disregarded when it is merely an alter ego or business conduit of an individual in cases where it should be so disregarded in the interest of securing a just determination of an action and that actual fraud or illegality is not required.

■■ "A sole stockholder cannot wrongfully cause the transfer of all of the property of the corporation to be made to himself so as to deprive a creditor of the corporation of the payment of his debt; and if he does so, the creditor may hold him responsible for that payment." (19 Am. Jur. 2d *Corporations* § 715 (1965); *Angle v. Chicago, St. P., M. & O. Ry. Co.*, 151 U. S. 1, 38 L.Ed. 55, 14 S.Ct. 240.) "Where the corporate fiction is merely an alter ego or business conduit of an individual, it may be disregarded in the interest of securing a just determination of an action." (18 Am. Jur. 2d *Corporations* § 15 (1965).) The doctrine that a corporation is a legal entity existing separate and apart from the person or persons composing it is a legal theory used for the convenience of the business world. "The concept cannot, therefore, be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of this policy, will be disregarded by the courts." (Annot., 63 A.L.R.2d 1051 § 1 (1959).) The case at bar is almost on all fours with *Automotriz del Golfo de California v. Resnick*, 47 Cal.2d 792, 306 P.2d 1, 63 A.L.R.2d 1042, where the question of inadequate capital is discussed as a basis for piercing the corporate entity and holding individuals liable. Piercing the corporate entity will be accomplished to prevent a solely-owned corporation to escape sales tax. *Superior Coal Co. v. Department of Finance*, 377 Ill. 282, 36 N.E.2d 354.

In *People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115, 277 N.E.2d 844, our supreme court stated: "The concept of disregarding the corporate existence and imposing liability personally upon the real parties to a transaction is well established and is summarized in 19 C.J.S., Corporations, sec. 839, page 264: 'Where the director or officer is the alter ego of the corporation, that is, where there is such unity of interest and ownership that the separateness of the individual and corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate

existence of the corporation would sanction a fraud or promote injustice, such director or officer will be held liable for obligations of the corporation.' "

■■ Each complaint in this case alleges the transfer by the defendant of corporate funds to himself, that such transfer was made without consideration and with the intent to defraud existing creditors of the corporation and the plaintiff as creditor. The answer of the defendant to the interrogatories indicate that on April 1, 1968, to March 31, 1969, the corporation returned to the defendant the sum of $9,808.08, and that such payments were repayment of funds advanced by him. It is thus apparent that as an individual creditor, he profited to this extent to the exclusion of other creditors including the plaintiff. Thus the defendant attempts here to use the corporate entity for his own personal benefit to the exclusion of the plaintiff, and thereby becomes unjustly enriched at the expense of the corporate creditors. Under such circumstances, we are of the opinion that the authorities require that the corporate veil be pierced and the defendant be held personally liable for the payment of this indebtedness. It seems perfectly clear that the protective cloak of corporate entity is sought to be used for his own personal enrichment and to accomplish an unjust result.

Accordingly, the judgment of the trial court must be and it is hereby affirmed.

Affirmed.

CRAVEN and SIMKINS, JJ., concur.