SUSAN STAP, Plaintiff-Appellant, *v.* THE CHICAGO ACES TENNIS TEAM, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 77-278

Opinion filed July 21, 1978.—Rehearing denied August 29, 1978.

24

James J. Reagan, of Northbrook (Paul R. Jenen, of counsel), for appellant.

Eugene L. Shepp, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal, the trial court granted motions of certain defendants to dismiss counts I and III of plaintiff's fifth amended complaint (the

complaint), and we are presented here with questions as to whether causes of action were stated in those counts.

It appears that plaintiff, a professional tennis player, entered into a contract on January 24, 1974, to play with the Chicago Aces Tennis Team in participation with other teams in a league of World Team Tennis, Inc. (WTT). An addendum to the contract provided for the payment to plaintiff of a base salary and certain bonuses. The signators were plaintiff and the "CHICAGO ACES TEAM TENNIS, INC. [Club] By Jordon H. Kaiser, Pres." The document was a standard WTT player's contract form and, as required by its provision, it was approved by the WTT commissioner on February 27, 1974. The Club, however, was not incorporated until May of 1974, with Jordon H. Kaiser and Walter Kaiser (the Kaisers) as sole shareholders.

Thereafter, a change in plaintiff's bonuses was provided for in an amendment to the contract dated June 1, 1974, which stated that it was between "Chicago Aces Tennis Team, Inc., Owner and Sue Stap, Player." Signators were plaintiff and "Jock A. Miller General Manager Chicago Aces."

The contract was for one playing season, with the Club having an option under certain conditions to renew for an additional year. Plaintiff played throughout the season, but the Club did not participate in the WTT league thereafter, and her contract was not extended.

This action was brought by plaintiff for salary and bonuses due her under the contract. In count I she seeks a recovery from Jordon H. Kaiser and alleges that she contracted to play tennis in exchange for his promise to pay a certain salary and bonuses; that he stated that she would be playing for his tennis team but would be employed by him individually; that he did not indicate that the Chicago Aces Tennis Team was to be a corporation; and that she did not understand her contract was between herself and a corporation to be formed.

In count III, plaintiff seeks a recovery against the Kaisers and defendant Kaiser Investments, an Illinois partnership. She alleges in pertinent part that the Kaisers were the only shareholders of the Club and of Kaiser Investments; that they were also majority stockholders of four other corporations; that the Kaisers undercapitalized the Club; that Kaiser Investments abused the corporate entity of the Club by funneling funds between the other four corporations and the Club until the Kaisers determined the Club would not be a viable corporation; and that the Kaisers, through Kaiser Investments, failed to carry on the business of Kaiser Investments and the other four corporations as separate interests to the extent that the observance of the fiction of separate interests would sanction a fraud by promoting injustice.

Count II, which is directed against the Club only, is not involved in this appeal and remains pending in the trial court.

Motions to strike and dismiss counts I and III by all defendants except the Club were granted as not stating a cause of action.

OPINION

As to count I, which seeks damages for breach of contract against Jordon H. Kaiser, plaintiff contends that she had contracted with him individually to play tennis for his promise to pay her a certain salary and bonuses. In the briefs filed in this court, both parties treat Jordon Kaiser as a promoter of the Club.

■■■ A promoter is one who alone or with others forms a corporation and procures for it the rights, instrumentalities and capital to enable it to conduct its business. (*Goodwin v. Wilbur* (1902), 104 Ill. App. 45; 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §189, at 657 (perm. ed. 1974). A promoter's personal liability on a pre-incorporation contract entered into with a third party depends on the intention of the parties at the time of the contract (*Whitney v. Wyman* (1879), 101 U.S. 392, 25 L. Ed. 1050; *H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 322 N.E.2d 45; *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683), and the court will look to the contract and other documents executed contemporaneously in determining the party's intent (*Philipsborn; Illinois Match Co. v. Chicago, Rock Island & Pacific Ry. Co.* (1911), 250 Ill. 396, 95 N.E. 492).

Relying solely on *Philipsborn,* plaintiff maintains here that Jordon Kaiser is personally liable on the contracts he entered into. We see no support for plaintiff in *Philipsborn,* which involved a promoter's liability on a precorporation contract for a construction loan, the promoter having signed as president of a company which was not incorporated until two months later. There was a breach of the agreement, and the lender sued the corporation and the promoter. The court, after stating that the promoter's liability turned on the intent of the contracting parties at the time of the contract, concluded that the promoter was not personally liable because the contract terms disclosed that plaintiff looked solely to the corporation for satisfaction.

The contract in the instant case, which was attached to plaintiff's complaint as an exhibit, discloses that it is a standard WTT player's contract of five printed pages and a one-page addendum. The first page states that "the Chicago Aces Tennis Team, Inc. ('Club') employs Sue Stap ('Player') to perform in or on behalf of the Club's participation in World Tennis Team, Inc. ('WTT' or 'League')." Throughout the remainder of the contract, the terms "Club" and "Player" were used and provisions concerning, *inter alia,* compensation, benefits, employment

duties, physical condition and injury, publicity, and arbitration. The contract was signed by plaintiff and "Chicago Aces Tennis Team, Inc., By Jordon Kaiser, Pres." A contract amendment which was executed after the Club was incorporated, provided for a change in plaintiff's bonuses and was signed by her and "Jock A. Miller, General Manager, Chicago Aces."

Where a written contract, attached to the complaint, is relied upon for a basis of recovery and there is a discrepency between the allegations of the complaint and the exhibit, the exhibit controls and will be taken as the factual basis upon which the complaint is predicated. *Tondre v. Pontiac School District* (1975), 33 Ill. App. 3d 838, 342 N.E.2d 290; *Katz v. Diabetes Association* (1975), 31 Ill. App. 3d 240, 333 N.E.2d 293.

■■  In the instant case, the allegations of count I that plaintiff entered into a contract to play tennis for Jordon Kaiser personally is contrary to the provisions of the contract, which clearly stated that plaintiff agreed to play tennis for the Club. We see nothing nor has plaintiff pointed out anything in the contract indicating otherwise. That plaintiff intended to play for the Club is further evident from the amendment entered into after incorporation, which was signed by her and the general manager of the Club. In view of the foregoing, we agree that no cause of action was stated in count I as to Jordon Kaiser.

Alternatively, in count III, plaintiff sought to have the corporate entity disregarded. She argues that because the Club was undercapitalized as the result of the manipulation of funds through the other corporate interests controlled by the Kaisers and Kaiser Investments, there should be a piercing of the corporate veil and those defendants held liable.

■■  A corporation is a legal entity that exists separate and distinct from its shareholders, officers, and directors, who are not as a general rule liable for the corporation's debts and obligations. (*Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 339 N.E.2d 299; *Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc.* (1963), 45 Ill. App. 2d 192, 195 N.E.2d 287; see also, H. Henn, Handbook of the Law of Corporations §146, at 250 (2d ed. 1970)). However, a corporate entity will be disregarded and the veil of limited liability pierced where it would otherwise present an obstacle to the protection of private rights (*Bevelheimer v. Gierach*) or when the corporation is merely the alter ego or business conduit of a governing or dominating personality (*Shamrock Oil & Gas Co. v. Ethridge* (D. Colo. 1958), 159 F. Supp. 693, 696).

■■■  For the doctrine traditionally known as "piercing the corporate veil" to apply, two requirements must be met—(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. (*People ex rel. Scott v.*

*Pintozzi* (1971), 50 Ill. 2d 115, 277 N.E.2d 844; *Berlinger's, Inc. v. Beef's Finest, Inc.* (1978), 57 Ill. App. 3d 319, 372 N.E.2d 1043; *Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 314 N.E.2d 549.) As stated in *People ex rel. Scott v. Pintozzi*:

> "The concept of disregarding the corporate existence and imposing liability personally upon the real parties to a transaction is well established * * * '[w]here the director or officer is the alter ego of the corporation, that is, where there is such unity of interest and ownership that the separateness of the individual and the corporation has ceased to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice, such director or officer will be held liable for obligations of the corporation.' " 50 Ill. 2d 115, 128, 277 N.E.2d 844, 851-52.

■■ It also appears that the conditions under which a corporate entity may be disregarded may vary, depending upon the circumstances in each case, inasmuch as the doctrine is essentially equitable in character. (See Broida, *The History of the Development of the Remedy of "Piercing the Corporate Veil,"* 65 Ill. B.J. 522 (1977); Comment, *Piercing the Corporate Veil In Illinois,* 6 DePaul L. Rev. 244 (1956).) A review of the cases discussing the problem disclose a variety of facts have been considered before corporate existence was disregarded. Included among them are the following: the failure to maintain adequate corporate records or to comply with corporate formalities (*Matter of Bowen Transports, Inc.* (7th Cir. 1977), 551 F.2d 171; *Berlinger's Inc. v. Beef's Finest Inc.*); the commingling of funds and other assets (*Wikelund Wholesale Co. v. Tile World Factory Tile Warehouse* (1978), 57 Ill. App. 3d 269, 372 N.E.2d 1022); the treatment by an individual of the assets of the corporation as his own (*Finazzo v. Mid-States Finance Co.* (1965), 63 Ill. App. 2d 161, 211 N.E.2d 290); and the disregard of legal similarities and the failure to maintain arm's length relationships among related entities (*Matter of Bowen Transports, Inc.*). Another factor that may be considered in determining whether injustice will result is whether the corporation was adequately capitalized. *Gowdy v. Richter; State Bank of Cerro Gordo v. Benton* (1974), 22 Ill. App. 3d 1007, 317 N.E.2d 578.

In Ballantine on Corporations, it is stated:

> "If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to

exempt the shareholders from corporate debts. It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unincumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." Ballantine on Corporations 302-03 (rev. ed. 1946).

■■■ The specific issue before us is whether the requirements of a cause of action founded upon a piercing of the corporate veil has been set forth in count III and, in this regard, section 33(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 33(3)) tells us that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties." Section 42(2) (Ill. Rev. Stat. 1975, ch. 110, par. 42(2)) provides that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense he is called upon to meet." These sections, of course, do not relieve a plaintiff of the necessity to state a cause of action (see Historical and Practice Notes, Ill. Ann. Stat., ch. 110, par. 42, at 98 (Smith-Hurd 1968)); however, in *Courtney v. Board of Education of City of Chicago* (1972), 6 Ill. App. 3d 424, 286 N.E.2d 25, the court held that a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle plaintiff to relief.

In count III, it is alleged that plaintiff entered into an agreement with the Club to play tennis for a salary and bonuses; that the Kaisers owned 100% of the Club stock; that they had contributed 100% of the capital in Kaiser Investments, a partnership; that the Kaisers were majority shareholders in four other corporations—one of which was the owner of the facilities used by the Club; that the Kaisers, through Kaiser Investments, manipulated the funds between the Club and the other corporation in disregard of the entities of each; that the Club was undercapitalized and, as a result, was unable to pay its debts and did not pay the salary and bonuses earned by plaintiff; that the Kaisers, through Kaiser Investments, failed to carry out the business of the Club and the other four corporations as separate interests; and that the observance of the fiction of separate corporate existence would sanction a fraud and permit injustice against plaintiff.

While it is true that some of the allegations set forth above are conclusory in nature, it appears to us that they sufficiently apprise defendant of the fact that plaintiff is claiming damages against the Kaisers and Kaiser Investments for breach of her contract and that her claim is founded on the doctrine known as the piercing of the corporate veil.

■■ We note further that a plaintiff is not required to allege facts with

30

precision where the necessary information to do so is within the knowledge and control of the defendants and unknown to plaintiff. (*Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 277 N.E.2d 748; *B. R. Paulsen & Co. v. Lee* (1968), 95 Ill. App. 2d 146, 237 N.E.2d 793.) In the instant case, plaintiff was never in position to know the facts with particularity, because the data necessary to state the allegations of count III with greater precision are within the records of defendants and, peculiarly, within their knowledge. Furthermore, where, as here, the trial court foreclosed discovery until the motions to strike and dismiss were acted upon, consideration should be given to the fact that a plaintiff was thereby prevented from obtaining the information necessary to make more factual allegations.

In the light of the foregoing, we are of the belief that the court improperly granted the motions to strike and dismiss count III of plaintiff's complaint.

That part of the order appealed from which granted the motion to strike and dismiss count I of the fifth amended complaint is affirmed; that portion of the order which granted the motions to strike and dismiss count III is reversed, and this matter is remanded for proceedings consistent with the content of this opinion.

Affirmed in part.

Reversed in part and remanded.

LORENZ and WILSON, JJ., concur.