**In re E. Nicholas WADE, Debtor.**

**U.S. LIFE TITLE INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**E. Nicholas WADE, Defendant.**

Bankruptcy No. 80 B 8132.
Adv. No. 81 A 1400.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 13, 1983.

Edna Selan Epstein, Ronald J. Ciardiello, Sidley & Austin, Chicago, Ill., for U.S. Life.

Gerard Kepple, St. Charles, Ill., for debtor.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came to be heard on U.S. Life Title Insurance Company of New York's (U.S. Life) motion for summary judgment against debtor Wade on its adversary complaint to determine certain amounts as liabilities of the debtor and non-dischargeable. The court having carefully considered the pleadings and memoranda filed herein as well as the pleadings and transcript of criminal proceedings instituted against Wade in the District Court does hereby grant plaintiff's motion for summary judgment in the amount of $309,-597.95 and declares this debt to be non-dischargeable.

It is plaintiff's contention that Wade's conviction by the District Court for the Northern District of Illinois for "fraudulently diverting funds entrusted to his companies by home buyers and their lending banks ... in violation of Title 18, U.S. Code, Section 1341" collaterally estops Wade from relitigation of the previously determined factual issues. As a result, plaintiff asserts Wade is liable to it for certain amounts obtained by said fraudulent scheme and these amounts should be determined to be non-dischargeable under section 523 of the Bankruptcy Code. Wade contends that collateral estoppel does not apply because he is presently appealing his conviction to the Supreme Court of the United States and that the various claims of U.S. Life are not valid or do not constitute non-dischargeable debts.

## STATEMENT OF FACTS

On August 3, 1975 Wade individually entered into an agency agreement with U.S. Life whereby Wade became an agent for U.S. Life in issuing title commitments and title insurance policies. Under the agency agreement, Wade was obligated to research title records to ascertain the insurability of a particular title before issuing said policies and was given authority to receive monies for real estate closings, to hold such funds and to disburse them.

Sometime after August 3, 1975 Wade formed the Independence Land Title Corporation of Illinois and assigned his agency agreement with U.S. Life to Independence. Wade was president, chief operating officer, majority stockholder, title counsel and examining attorney of Independence. Wade issued title policies through Independence and underwritten by U.S. Life through early 1980. In late 1979 and early 1980 Wade was involved in the issuing of title insurance policies and participating in the real estate closings for Robert Harris and Carl Staub, Jr. Wade, while acting as

escrowee on these two transactions, engaged in the following scheme: 1. Obtained funds from the buyer's lending banks for the purpose of paying off Fieldcrest homes, the sellers, and its construction financier, First Financial Savings & Loan of Downers Grove for the properties in question; 2. Issued title insurance policies to Harris and Staub which indicated that all prior liens had been paid and they were receiving good, clear, fee-simple title to their homes; and 3. Instead of them paying off the liens, as indicated in the title insurance, diverted the funds to the Independence operating account and proceeded to pay Independence, Fieldcrest, (of which Wade was a shareholder) and his own personal expenses.

When it was discovered that Wade had failed to pay off First Financial's interest in the Harris and Staub properties as well as various mechanic's liens placed on the properties, U.S. Life, the insurer, was forced to pay off the liens and issue new title insurance policies.

On July 14, 1981 a U.S. Grand Jury indicted Wade for violation of Title 18, Sections 1341 and 1014 of the U.S. Code. In September of 1981 after a four day trial in which Wade testified in his own behalf, the trial jury found Wade guilty as charged of mail fraud and bank fraud.

Wade filed his petition for relief under Chapter 11 of the Bankruptcy Code on June 30, 1980. On August 28, 1980 the Chapter 11 was converted to a Chapter 7 proceeding.

## ISSUES

In this case, the court is asked to determine whether or not Wade is liable to the plaintiff, U.S. Life, for certain amounts and whether this debt is non-dischargeable under section 523 of the Bankruptcy Code. The main issue for the court to decide is whether or not the criminal conviction against Wade and the District Court record supporting that conviction operate to collaterally estop Wade from relitigating factual issues in the bankruptcy court regarding U.S. Life's claims which were litigated in the other court proceedings. Secondly, if collateral estoppel does apply, the court

must decide whether there are any factual issues remaining or if it may on the basis of the District Court proceedings alone declare the debt to U.S. Life to be non-dischargeable.

## DISCUSSION

■ Section 56(c) of the Federal Rules of Civil Procedure states that a summary judgment sought "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Plaintiff, as the moving party, has the burden of showing the absence of any genuine issue as to all material facts which support its theory of law. *Mack v. Cape Elizabeth School Board,* 553 F.2d 720 (1st Cir.1977). Collateral estoppel when applied precludes relitigation of factual issues. The determination of whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. *Spilman vs. Harley,* 656 F.2d 224 (6th Cir.1981). Therefore, if plaintiff can establish that collateral estoppel does indeed apply in this case the court is precluded from making factual inquiries and summary judgment will lie on a legal determination of the dischargeability question.

■ The doctrine of collateral estoppel, developed at common law, is aimed at preventing duplicative litigation and encouraging the finality of justice. Essentially, it holds that once issues of fact and law between opposing parties have been fully and fairly litigated and substantially adjudicated, those parties should be estopped from relitigating those issues before another court. *In re Davis,* 23 B.R. 639 (Bkrtcy.W.D.Ky.1982). The question before the court is whether the issue of non-dischargeability as to the monies Wade owes U.S. Life can be decided on the basis of the record before us, or whether a new trial will be necessary. It is the aim of the court to avoid the retrial of matters which have been fully litigated and substantially adjudicated in other courts.

In *Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) the United States Supreme Court ended considerable debate among the federal courts regarding the doctrine of res judicata by holding that a bankruptcy court is not limited by said doctrine to a review of the judgment and record of prior state court proceedings when considering dischargeability of a debt. By footnote, however, the Supreme Court explicitly left unanswered the related issue of collateral estoppel. They stated that:

This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit .. (citations omitted) .. If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of Section 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

Section 17 of the old Bankruptcy Act was essentially the same as Section 523 of the new Bankruptcy Code and *Brown v. Felson* is often cited today in making Section 523 determinations. As of yet, a consensus has not been reached on the issue of what collateral effect will be given pre-bankruptcy judgments. Some courts read the congressional grant of exclusive jurisdiction in dischargeability determinations to bankruptcy courts to preclude application of collateral estoppel. *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980). Others see a prior state court judgment as simply establishing a prima facie case of non-dischargeability. *Matter of Gross*, 654 F.2d 602 (9th Cir.1981). *In re Carothers*, 22 B.R. 114, 9 B.C.D. 680 (Bkrtcy.Minn.1982). The Seventh Circuit has not spoken determinately on the subject but the U.S. District Court for the Northern District of Illinois has provided some guidance in the case of *U.S. Life Title Insurance Co. v. Dohm*, 19 B.R. 134 (D.C.Ill., 1982).

In *Dohm* the facts were extremely similar to the case at issue here. Dohm was an agent of U.S. Life for the purpose of writing title insurance policies just as Wade was here. The Circuit Court found Dohm guilty of diverting escrow funds entrusted to him and liable to U.S. Life. After U.S. Life attempted to collect on the circuit court judgment, Dohm filed a petition in the bankruptcy court and U.S. Life filed a complaint to determine that the amount due it was non-dischargeable under Section 523 of the Bankruptcy Code. The only essential difference between *Dohm* and this case is that Dohm was found liable to U.S. Life by the state trial court on a motion for summary judgment. Here Wade admitted that he diverted escrow funds and was convicted by a jury in the federal district court of criminal mail fraud and bank fraud.

The *Dohm* court in finding that collateral estoppel applied and the debt was non-dischargeable, pointed out that the question of whether or not collateral estoppel applies in dischargeability proceedings is a question of discretion for bankruptcy courts. The *Dohm* court noted that *Brown v. Felson*, supra, held that a bankruptcy court *may* look behind a state court judgment in determining dischargeability but it is not compelled to do so. *Dohm* held that where a state court judgment is obtained fairly, where due process is accorded at all times to the defendant and where the complaint and judgment order are unambiguous that the judgment debt is of a non-dischargeable nature, bankruptcy courts may find on the basis of the evidence of the state court proceedings alone that the debt is non-dischargeable so long as the full state court record is before the Bankruptcy Court. *Matter of Dohm*, 19 B.R. 132 (Bkrtcy.N.D. Ill.1981) and 19 B.R. 134 (N.D.Ill.1982).

The *Dohm* court also recognized the third circuit policy regarding the conditions to be met in order for the doctrine of collateral estoppel to apply. These conditions are as follows:

1. The issues sought to be precluded must be the same as those involved in the prior action;

2. The issues must have been actually litigated;

3. They must have been determined by valid and final judgment;

4. The determination must have been essential to the final judgment. *In re McMillan,* 579 F.2d 289, 291–92 (3d Cir. 1978); *Matter of Ross,* 602 F.2d 604, 608 (3d Cir.1979).

### 1. The Issue in the Prior Action.

As was stated earlier, Wade was convicted of mail fraud and bank fraud. Bank fraud is defined in section 1014 of Title 18 of the U.S. Code as follows:

Whoever knowingly makes any false statement or report for the purpose of influencing in any way the actions of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, upon any application, advance, commitment or loan, shall be guilty of an offense against the laws of the United States.

The instructions given to the jury in Wade's case indicated that to sustain the charge of making false statements to federal financial institutions, the Government must prove the following propositions:

1. That the defendant made a false statement on an application, commitment or loan or any change or extension thereof; 2. That the defendant made the statement knowing the statement to be false; 3. That the defendant made the statement for the purpose of influencing in any way the action either of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, or of the Federal Deposit Insurance Corporation itself.

The standard of proof required is proof beyond a reasonable doubt.

Mail fraud is defined in section 1341 of Title 18 of the United States Code as follows:

Whoever having devised or intending to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent representations or promises or for the purpose of executing such scheme or artifice, or attempting to do so, places in any post office or authorized depositories for mail any matter or thing whatever to be sent or delivered by the post office department shall be guilty of an offense of the laws of the United States.

The instructions given to the jury in Wade's case indicated that to sustain the charge of mail fraud, the Government must prove the following propositions:

1. That there was a scheme to defraud; 2. that the mails were used in furtherance of that scheme; 3. that the defendant had the intent to defraud.

The instructions further stated that:

A scheme to defraud under the mail fraud statute means some plan to procure money or property by means of false pretense or representation calculated to deceive persons of ordinary prudence.

The Government must prove that the defendant participated in such a plan and that such representations were made by him or his agents knowing they were false and with the intent to defraud. It is not necessary, however, that any person was actually defrauded by the scheme, nor is it necessary that the Government prove all of the pretenses, representations and acts charged in the indictment. It is essential only that one of them be proved to show the existence of the scheme.

The standard of proof required is also proof beyond a reasonable doubt and Wade was found by the jury to be guilty as charged on all counts.

■ In order for collateral estoppel to apply, the issues sought to be precluded must be the same as those involved in the prior action. The issues in the federal district court proceedings are outlined above. Now it is necessary to examine the issues under Section 523 of the Bankruptcy Code. Section 523(a) states that:

A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt

2. for obtaining money, property, services or an extention, renewal or refinance of credit, by—

   (A) false pretenses, a false representation or actual fraud. . .;

4. for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

The five elements required to prove that an obligation is non-dischargeable under Section 523(a)(2)(A) are as follows:

   1. that the debtor made a representation;

   2. that the debtor knew the representation was false when he made it;

   3. that the debtor made the representation with intent to deceive the creditor;

   4. that the creditor relied on the representation; and

   5. that the creditor sustained damage as a proximate result of the false representation.

*In re Houtman,* 568 F.2d 651 (9th Cir. 1978); *Matter of Nelsen,* 561 F.2d 1342 (9th Cir.1977).

In comparing the above factors with the factors outlined previously regarding bank fraud and mail fraud, it becomes obvious that the first three issues to be determined under Section 523(a)(2)(A) are identical to the items outlined by the jury instructions in the previous criminal case. The factors that were not decided specifically by the jury were factors 4 & 5 regarding creditor's reliance and damages. In fact, the jury instructions specifically stated that it was not necessary that any person was actually defrauded by the scheme. Proof of the existence of the scheme is what was vital in the criminal case. However, in proving points 1–3 and thus sustaining their burden, the Government also did present uncontroverted proof that U.S. Life had to pay out money to the mortgage holder and mechanic's lien claimants as well as search the titles and issue new title insurance policies. Therefore, while collateral estoppel may apply as to points 1–3, summary judgment also lies as to points 4 & 5 because Wade has presented no issues of fact for the court to decide and as a matter of law, U.S. Life

under the theory of subrogation is entitled to reimbursement for the amounts they had to pay out due to Wade's fraudulent scheme.

■ More particularly, bankruptcy courts have exclusive jurisdiction to determine the meaning of false pretenses and false representations. Where, as in the facts of this case, the bankrupt is entrusted with money to be used for a specific purpose and he has no apparent intention of using the money for that purpose, then a misrepresentation clearly exists upon which a debt can be properly held non-dischargeable. *Matter of Pappas,* 661 F.2d 82 (7th Cir.1981). The evidence before the court indicates that U.S. Life was forced to pay off the prior mortgages on the property in question given that it relied on Wade's representations in his agency agreement that he would research title records, receive monies for real estate closings, hold such funds and disburse them as directed. Wade does not contest that he did not disburse funds as directed. Furthermore, there is no question that U.S. Life sustained damage as a proximate result of Wade's false representations. The evidence clearly indicates that Wade did not pay the liens of First Financial Savings and Loan of Downers Grove nor various mechanic's liens, that U.S. Life had to pay these liens and that U.S. Life had to incur costs to issue new title insurance policies, all as a result of Wade's conduct.

■ The doctrine of subrogation indicates that if an insurer pays a loss which is due to the wrongful act of another, the insurer is subrogated to the rights of the insured and may prosecute a suit against the wrongdoer to reimburse itself. *Egan v. British & Foreign Marine Insurance Co.,* 193 Ill. 295, 61 N.E. 1081 (1901). The subrogation concept is an equitable concept designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. The doctrine is wholly consistent with Section 523 of the Bankruptcy Code and while

Wade has made some broad allegations regarding U.S. Life's conduct, these allegations do not meet the dischargeability issue and Wade's allegations may be more properly brought in another forum.

However, the court's decision today does not impose the burden upon Wade to pay U.S. Life's attorney's fees. No authority has been submitted to indicate to the court why such an award should be given. Furthermore, the court knows of no authority in the Bankruptcy Code or in the contracts between the parties for awarding such fees.

### 2. The Issues Actually Litigated.

The second condition that must be met in order to apply the doctrine of collateral estoppel is that the issues sought to be precluded must have been actually litigated in the prior court. In the prior district court proceeding, full hearing was had on the issues outlined above. The hearing lasted for four days and Wade testified in his own behalf. As a result, there is no doubt that this condition was met.

### 3. Valid and Final Judgment.

■ The third condition to be met is that the determination in the prior case must have been a valid and final judgment. It is Wade's contention that since he is presently appealing to the U.S. Supreme Court the matters adjudicated by the District Court are not the subject of a final judgment. A judgment may be final, however, despite the fact that an appeal from it has not been decided. *Sherman v. Jacobson*, 247 F.Supp. 261 (S.D.N.Y.1965) citing *U.S. v. Nysco Labs, Inc.*, 318 F.2d 817 (2nd Cir.1963). In the case of *Lummus Co. v. Commonwealth Oil Refinery Co.*, 297 F.2d 80 (2nd Cir.1962) in discussing a collateral estoppel question Judge Friendly pointed out that:

> Whether a judgment . . . ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant

may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

In the present case, there was no indication that the District Court verdict was intended to be provisional or subject to change or modification in the future by the same tribunal. There is no evidence that issues previously decided can be litigated anew in any litigation pending in the same tribunal. Further, there is no evidence to indicate that the hearing before the District Court was not adequate. The pendency or possibility of appeal does not prevent application of the doctrine of collateral estoppel and for the foregoing reasons, the court finds that the determination in the District Court was a valid final judgment and collateral estoppel may apply.

### 4. Determination Essential to the Final Judgment.

The fourth and final condition which must be met is that the determination of the issues sought to be estopped must have been essential to the final judgment rendered. A detailed examination of the issues has already been made and it has been shown that the issues to be determined in order to find a debt non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code are identical to those used to determine bank fraud and mail fraud. Therefore, the determination of the issues sought to be estopped were the very issues which led to the prior judgment and could not be more essential to that judgment.

In summary, the court finds that all of the conditions for the application of the doctrine of collateral estoppel have been met. The jury verdict and judgment thereon rendered in the District Court presents a clear cut case of a situation in which a liability has been incurred by false pretenses or false representations under Section 523(a)(2)(A) of the Bankruptcy Code. The debtor has failed to raise any triable issues of fact not previously disposed of in the District Court proceedings. Therefore,

premised on the rationale of *Brown v. Felsen,* supra, *Matter of Dohm,* supra, and the aforementioned precepts of law, the petitioner's motion for summary judgment must be granted as to all amounts claimed except attorney's fees.

Having granted U.S. Life's motion for summary judgment on their Section 523(a)(2)(A) cause of action, the court finds it is not necessary to determine if summary judgment should be granted with respect to U.S. Life's Section 523(a)(4) and 523(a)(6) causes of action. However, given the seriousness of the situation and the great amounts of money involved, a brief discussion of Section 523(a)(4) seems to be in order.

A primary purpose for having bankruptcy relief is to release an honest, unfortunate and insolvent debtor from the burden of oppressive debts and to restore him to business activity. This is done in the interests of the common good and is liberally construed to that end. However, the Bankruptcy Code should also be liberally construed so as to prevent the discharge in bankruptcy of a liability which would not exist but for the fraudulent conduct of the debtor. The Bankruptcy Code in Section 523(a)(4) forbids the discharge of debtor from a debt incurred through fraud while acting as a fiduciary capacity, embezzlement or larceny and such debt is non-dischargeable whether reduced to a judgment or not. Therefore, if a debtor's debt is brought into existence by debtor's embezzlement or misappropriation, such debt must be found non-dischargeable because had it not been for debtor's conduct, there would not be the debt. *Hartford Accident & Indemnity Co. v. Flanagan,* 28 F.Supp. 415 (S.D.Ohio 1939).

Wade contends that he may not be held liable for any claims of U.S. Life because Independence Land Title Corp. and not Wade himself was at all periods in question U.S. Life's agent. Therefore, to determine if U.S. Life can be awarded a summary judgment as to its Section 523(a)(4) claim, two questions must be answered:

1. Did Wade individually have a fiduciary duty to U.S. Life?

2. If so, was that duty breached?

As to the first issue, the evidence indicates that Wade was the president, chief operating officer, majority stockholder, title counsel and examining attorney of Independence. Wade is the one who received the funds of Harris & Staub, he deposited those funds into Independence Land Title's escrow account, he diverted those funds to Independence Land Title's operating account and he is the one who drew on said account to pay off debts of Independence, Fieldcrest and his own home and car. A corporate entity will be disregarded and the veil of liability pierced where it would otherwise present an obstacle to the protection of private rights or where the corporation is merely the alter ego or business conduit of a governing or dominating personality. (See, *Matter of Bowen Transports, Inc.* 551 F.2d 171 (7th Cir.1977), *Stap v. Chicago Aces Tennis Team,* 63 Ill.App.3d 23, 20 Ill.Dec. 230, 379 N.E.2d 1298 (1978), *Shamrock Oil & Gas Co. v. Ethridge,* 159 F.Supp. 693 (D.Colo.1958)). Given the facts above as well as the record in the prior proceeding, the court finds this an appropriate setting for piercing the corporate veil and holding Wade liable for the claims of U.S. Life. When an officer of a corporation misuses his position to gain a personal benefit at the expense of a corporate creditor, that corporate creditor's claims are quite cognizable in his individual bankruptcy. *John P. Maguire & Co. v. Herzog,* 421 F.2d 419 (5th Cir.1970), *Matter of Whitlock,* 449 F.Supp. 1383 (D.Mo.1978). Furthermore, even if he or she did not profit from the transaction, an officer of a corporation who knowingly causes the misappropriation of trust property by the corporation is personally liable for participation in the breach of trust committed by the corporation. *Matter of Folliard,* 10 B.R. 875 (D.Md.1977).

Having established that Wade may be held personally liable for any debts incurred by his breach of fiduciary duty owed to U.S. Life, the question becomes whether or not Wade did indeed breach that duty.

Wade in his agency agreement with U.S. Life agreed to process applications for title insurance, search title records and receive, hold and disburse funds deposited in regard to any transaction in which U.S. Life's title insurance was involved. Specifically, in paragraph H of said agreement, Wade promised to "Keep safely in accounts all funds received by the agent from any source in connection with transaction in which the principal's title insurance is involved and to disburse said funds only for the purposes for which same were entrusted." This provision clearly establishes a fiduciary duty in Wade and it has already been established in the criminal case that Wade did not uphold these provisions. Thus, through the doctrine of collateral estoppel, it becomes apparent that Wade breached his fiduciary duty.[1]

Fiduciaries are held to a duty of fairness, good faith and fidelity. Wade, while acting in his fiduciary capacity, failed to pay off the existing mortgages and mechanic's liens in the transactions involving Staub & Harris and knowingly diverted the monies placed in trust with him to his own use. The fraud he committed is actionable under Section 523(a)(4) of the Bankruptcy Code and it is the determination of this court that the debt due U.S. Life as outlined above is non-dischargeable.

## CONCLUSIONS OF LAW

■ The determination of whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in a case. If a plaintiff can establish that collateral estoppel applies regarding issues litigated in a pre-bankruptcy proceeding, the bankruptcy court is precluded from making factual inquiries and summary judgment will lie on the legal determination of a dischargeability question.

■ In order for collateral estoppel to apply in a dischargeability proceeding, the following conditions must be met:

1. The issues sought to be precluded must be the same as those involved in the prior action;
2. The issues must have been actually litigated;
3. Such issues must have been determined by a valid and final judgment;
4. The determination of the issues must have been essential to the final judgment.

All of the conditions in order for the doctrine of collateral estoppel to apply have been met in this case. The jury verdict rendered by the District Court presents a clear cut case of a situation in which a liability has been incurred by false pretenses or false representations under Section 523(a)(2)(A) and a fiduciary duty has been breached under Section 523(a)(4) of the Bankruptcy Code. Wade has failed to raise any triable issues of fact not previously disposed of in the District Court criminal proceedings and as a matter of law, U.S. Life's motion for summary judgment must be granted.

WHEREFORE, IT IS HEREBY ORDERED that U.S. Life's motion for summary judgment in the amount of $309,597.95 is granted and this debt is declared to be non-dischargeable under Section 523 of the Bankruptcy Code.

---

1. Since plaintiff is awarded summary judgment on its Section 523(a)(2)(A) claim and the analysis would be almost identical for the Section 523(a)(4) claim, the court will not discuss the application of collateral estoppel on the fiduciary duty point.